T.C. Memo. 1998-332


UNITED STATES TAX COURT


JAMES W. HARRIS AND DORTHY R. HARRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4394-97.                    Filed September 22, 1998.


James W. Harris, pro se.

<u>Kay Hill</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine respondent's determination of a $13,931 deficiency in
their 1992 Federal income tax, a $2,357 addition thereto under
section 6651(a)(1), and a $2,786 accuracy-related penalty under
section 6662(a).  Following the parties' concessions, we must
decide:

1.   Whether petitioners understated their taxable interest income by $11,801.  We hold they did.

2.   Whether petitioners overstated their deductible rental loss by $48,129.  We hold they did.

3.   Whether, without consideration of the interest income and the rental loss mentioned above, petitioners understated their gross income by $17,014.  We hold they did not.

4.   Whether petitioners are liable for the addition to tax and accuracy-related penalty determined by respondent under sections 6651(a)(1) and 6662(a), respectively.  We hold they are.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the exhibits submitted therewith are incorporated herein by this reference.  Petitioners are husband and wife.  They resided in Soldotna, Alaska, when they petitioned the Court.  They were experiencing financial difficulties during

---

[1] We have given no consideration to documents that petitioners attached to their brief.  These documents are not evidence.  Rule 143(b); West 80th St. Garage Co. v. Commissioner, 12 B.T.A. 798, 800 (1928); Boyd Gaming Corp. v. Commissioner, T.C. Memo. 1997-445; see also Saunders v. Commissioner, T.C. Memo. 1992-361, and the cases cited therein.

the relevant period; among other things, they were unable to pay their obligations timely, and they lost property in foreclosure.

Petitioners filed a 1992 joint Federal income tax return on April 19, 1995, reporting the following items of income:

```
Wages
$66,451
Taxable interest income
2,015
Business income or (loss)
(73,129)
Unemployment compensation
4,664
Other income--Jury duty
37
```

Petitioners claimed that their taxable income was zero and that their tax liability was zero.  Petitioners claimed they were due a refund of $4,504, which represented the amount of Federal income tax that was withheld from wages paid to Ms. Harris.

Petitioners reported the $2,015 of interest income to reflect their receipt of $1,832 in Alaskan permanent fund dividends.  Petitioners erroneously reported the $2,015 amount, rather than the correct $1,832 amount, and they erroneously reported that the dividends were interest.  The parties agree that petitioners should have reported the $1,832 amount as miscellaneous income.

Petitioners received 1992 Forms 1099-INT, Interest Income, in the amounts and from the payers set forth below:

```
National Bank of Alaska (NBA)     $11,880
Alaskan Federal Credit Union           28
Internal Revenue Service               76
```

11,984

Petitioners concede that their 1992 gross income includes $28 of interest paid by the Alaskan Federal Credit Union and $76 of interest paid by the Internal Revenue Service. Petitioners dispute that their 1992 gross income includes the $11,880 of interest reported on the Form 1099-INT issued to them by NBA. NBA reported that petitioners were paid $11,880 in interest on an account (the account) at its bank. Petitioners had opened the account in 1987 in connection with their sale of a home to Dale and Kathy Turner on September 10, 1987. Petitioners sold the home to the Turners for $129,000, and the Turners agreed to pay petitioners the selling price through monthly installments of at least $960. The Turners agreed that any outstanding balance owed to petitioners would bear interest at 10.5 percent per annum. When petitioners had owned the home, they borrowed money from Seafirst Mortgage Corp. (Seafirst) using the home as collateral. When petitioners sold the home to the Turners, petitioners did not satisfy this debt, which then equaled $98,600, opting to continue making monthly payments on it. Petitioners' debt to Seafirst bore interest at 10.5 percent per annum.

The account was an escrow account, and NBA was the escrowee.[2] The Turners agreed to make the monthly payments due petitioners on the sale directly to NBA in its capacity as

---

[2] Petitioners paid NBA a fee for the services that it rendered in connection with the escrow account.

escrowee, and NBA was generally directed to remit identical amounts to Seafirst to apply to the debt owed it by petitioners. Following petitioners' sale of the home, Seafirst assigned petitioners' debt to Union Planters National Bank (Union Planters). NBA collected $13,495 from the Turners in 1992, and it distributed $13,369 to Union Planters on behalf of petitioners. NBA ascertained that $11,880 of the $13,495 amount was interest, and it issued petitioners (and respondent) a Form 1099-INT reflecting this amount.[3] Respondent determined that petitioners failed to include in income the $11,880 of interest shown on the Form 1099-INT, and, accordingly, that their interest income for 1992 was understated by $11,801; i.e., the $11,984 total amount reported on the three Forms 1099-INT issued to petitioners, less the $183 amount reported on petitioners' tax return as interest from sources other than the Alaskan permanent fund ($2,015 - $1,832).

As to the claimed loss of $73,129, Harris Enterprises is Mr. Harris' sole proprietorship through which he rented (as lessor) approximately 20 mini storage units in a 6,000-square-foot building. On one or two other occasions, Harris Enterprises also rented two other buildings for use as space in which to hold auctions or flea markets. According to

---

[3] Union Planters ascertained that petitioners had paid it $9,833 of interest in 1992 on their debt to it. Union Planters issued a 1992 Form 1098, Mortgage Interest Statement, to petitioners reflecting this amount.

petitioners' tax return, Harris Enterprises' income and expenses
for 1992 were as follows:

Income:                                              $18,448

Expenses:
      Advertising                    $5,275
      Depreciation                   28,280
      Insurance                       4,475
      Mortgage interest              26,874
      Office expense                    420
      Repairs and maintenance         3,408
      Taxes and licenses              8,310
      Utilities                       5,135
      Water well replacement          6,500
      Gravel parking lot              2,900      (91,577)

Net loss                                            (73,129)

The $18,448 of gross income included approximately $500 from the
occasional rental of the buildings for auctions or flea markets;
the rest of the gross income was attributable to the rent of the
storage units.  As to the claimed depreciation, $912 was claimed
on a computer, and the rest was claimed on the buildings.
Petitioners' tax return reports that the computer was purchased
in 1986 at a cost of $6,525, and that the buildings were
purchased in 1986 at a total cost of $520,000.

Respondent determined that petitioners were not entitled to
deduct any of the $42,955 amount claimed for the business
expenses reported as advertising, gravel parking lot, water well
replacement, and depreciation.  As to the first three expenses,
respondent determined that petitioners had not established that
those expenses were paid or incurred during the taxable year, or

that the expenses were ordinary and necessary to Harris Enterprises' business.[4]  As to the depreciation expense, respondent determined that petitioners had not proven their cost or other basis in the underlying assets, or that the assets were depreciable.  With respect to respondent's recomputed loss of $30,174 ($73,129 - $42,955), respondent determined that section 469 applied to limit petitioners' current deduction to $25,000.

Exclusive of the business and interest adjustments, respondent also determined that petitioners understated their 1992 gross income by $17,014.  Respondent calculated this understatement on the bases of respondent's analysis of petitioners' cash transactions during 1992.  The understatement, as determined by respondent through the analysis, represents the excess of petitioners' estimated cash expenditures over the available funds which petitioners were estimated to have based on known taxable and nontaxable sources.  For purposes of this analysis, respondent referenced a publication of the U.S. Department of Labor that listed the average annual expenditures of residents of the United States, and, relying on this publication, estimated that petitioners' personal living expenses equaled $36,714.  Respondent's analysis did not take into account any cash that petitioners may have had on hand at the beginning

---

[4] As to the gravel parking lot and water well replacement, respondent determined alternatively that those items were capital assets which had to be depreciated over their useful lives.

or end of 1992. Respondent's analysis also was based on the assumption that petitioners spent $63,297 in cash on the expenses, other than depreciation, which they claimed on their return for Harris Enterprises.

## OPINION

We decide the subject issues seriatim. We bear in mind that petitioners bear the burden of proof, Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933), and that Congress has required taxpayers to keep sufficient records to substantiate any deduction that is otherwise allowed by the Code, sec. 6001; see also New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). We also bear in mind that deductions are strictly a matter of legislative grace, and that petitioners must prove their entitlement to the disputed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133; see also New Colonial Ice Co. v. Helvering, supra at 440 ("a taxpayer seeking a deduction must be able to point to an applicable statute and show that * * * [the taxpayer] comes within its terms"). Petitioners rely mainly on the testimony of Mr. Harris to attempt to meet their burden of proof.

## 1. Taxable Interest Income

Respondent determined that petitioners failed to include in their gross income $11,801 of interest income received by NBA on

their behalf. According to petitioners, this amount is not includable in their gross income because the Turners paid the interest directly to Union Planters.

We agree with respondent. Contrary to petitioners' assertion, the Turners did not pay Union Planters directly. They remitted their payments to NBA, which collected the payments on behalf of petitioners. NBA, in turn, remitted the payments to Union Planters to apply to the debt owed it by petitioners. Instead of requiring that the Turners obtain third-party financing for their purchase of the home, petitioners personally financed the Turners' purchase, allowing them to wrap their debt to petitioners around the debt that petitioners already owed Union Planters. In such a wraparound situation, petitioners' gross income includes the interest that the Turners paid NBA on petitioners' behalf. See sec. 1.61-7(a), Income Tax Regs.

2. Deductible Rental Loss

Respondent determined that petitioners were entitled to deduct only $25,000 of the $73,129 loss that they reported for Harris Enterprises. Respondent generally determined that petitioners had not substantiated $42,955 of the expenses which went into the reported loss, and, with respect to the recomputed loss of $30,174, that petitioners were limited by section 469 from deducting currently more than $25,000. Petitioners argue that they should be allowed to deduct the reported loss in full.

Petitioners assert that the Code does not detail specifically the records that must be kept by a sole proprietor like Mr. Harris and that section 469 was not meant to apply to a small business like Harris Enterprises.

We agree with respondent that petitioners may not deduct the disputed amounts. First, we are unpersuaded that petitioners incurred or paid the amounts claimed for advertising, gravel parking lot, and water well replacement, or that petitioners had a depreciable basis in the buildings for which depreciation was claimed. The regulations mandate that taxpayers "shall keep such permanent books of account or records * * * as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax". Sec. 1.6001-1(a), Income Tax Regs. Petitioners did not comply with this mandate. They did not submit any credible record to support their claim to any of the disputed deductions. Nor did they submit canceled checks or bona fide receipts. Although Mr. Harris testified vaguely as to these expenditures, we decline to rely on this self-serving and uncorroborated testimony. Ruark v. Commissioner, 449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Clark v. Commissioner, 266 F.2d 698, 708-709 (9th Cir. 1959), affg. in part and remanding T.C. Memo. 1957-129; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We hold that petitioners have failed to

meet their burden of proof in substantiating the questioned deductions. In so holding, we note that we have not applied the rule of Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), under which the Court may approximate the amount of a deductible expense when evidence shows that a taxpayer incurred it, because we have no basis upon which to make such an estimate. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

As to the applicability of section 469, section 469 was enacted by Congress as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 501(a), 100 Stat. 2085, 2233, to require that passive losses generally be used currently to offset only passive income. Passive losses include most losses from a rental activity. Sec. 469(c)(2). In the case of rental real estate activities, taxpayers like petitioners are allowed to deduct currently losses up to $25,000. Sec. 469(i).

Harris Enterprises is a rental real estate activity; thus, section 469 applies to limit to $25,000 petitioners' deduction for any resulting loss. Although petitioners invite the Court to carve out an exception for small businesses, we decline to do so. We find nothing in the text of section 469, or its legislative history, that supports petitioners' bald assertion that the section does not apply to small businesses.

We sustain respondent's determination on this issue.

3. $17,014 Understatement of Gross Income

Respondent determined that petitioners had an additional understatement of income equal to $17,014. Petitioners argue

that they did not. According to petitioners, respondent's analysis is flawed because the estimated living expenses used therein to calculate the purported understatement were much greater than their actual living expenses.

We agree with petitioners that respondent's determination on this issue is wrong, but we do so mainly for different reasons. Respondent's determination is based erroneously on the assumption that petitioners paid all $63,297 of the expenses which they deducted for Harris Enterprises. As we have held above, however, petitioners did not pay the amounts claimed for advertising ($5,275), gravel parking lot ($2,900), and water well replacement ($6,500). When these nonpayments are factored into respondent's analysis, the understatement drops to a mere $2,339 ($17,014 - $14,675). Seeing further that respondent's analysis failed to give proper regard to the fact that petitioners were financially handicapped during the relevant years, we believe that it is reasonable to conclude that petitioners spent $2,339 less in cash expenditures than the amount that was set forth in respondent's analysis. We hold for petitioners on this issue.

4. Additions to Tax/Accuracy-Related Penalty

Respondent determined an addition to tax under section 6651(a), asserting that petitioners failed to file timely a 1992 Federal income tax return, and that they did not show that their failure was due to reasonable cause. In order to avoid this addition to tax, petitioners must prove that their failure to file was: (1) Due to reasonable cause and (2) not due to willful

neglect. Sec. 6651(a)(1); Rule 142(a); <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). A failure to file timely a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence, and, nevertheless, was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure or reckless indifference. <u>United States v. Boyle</u>, <u>supra</u> at 245.

As to the accuracy-related penalty, section 6662(a) imposes such a penalty equal to 20 percent of the portion of an underpayment that is attributable to, among other things, negligence. In order to avoid this penalty, petitioners must prove that they were not negligent, i.e., that they made a reasonable attempt to comply with the provisions of the Code, and that they were not careless, reckless, or in intentional disregard of rules or regulations. Sec. 6662(c); see also <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972). Petitioners were negligent if they displayed a lack of due care or failed to do what a reasonable and prudent person would do under similar circumstances. <u>Allen v. Commissioner</u>, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989).

On the basis of our careful review of the record, we hold that petitioners are liable for both the addition to tax and the accuracy-related penalty determined by respondent. Petitioners filed their 1992 tax return on April 19, 1995, and they have not provided a satisfactory explanation for their failure to file

timely. The facts at hand also do not establish that petitioners made a reasonable attempt to comply with the provisions of the Code. The Code requires that taxpayers keep sufficient records to substantiate their claimed deductions, and we find that petitioners did not make a reasonable effort to comply with that requirement.

In reaching all our holdings herein, we have considered all arguments made by the parties for contrary holdings, and, to the extent not addressed above, find them to be without merit.[5] To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[5] We note that petitioners make various protester type arguments in their brief as to why they are not subject to Federal income tax. These shopworn arguments as to the validity of the Federal income tax regime have been universally rejected by every court that has considered them. We reject these arguments without further discussion.