T.C. Memo. 2004-287


UNITED STATES TAX COURT



MICHAEL J. BARKLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7610-02.                    Filed December 28, 2004.


Michael J. Barkley, pro se.

<u>Katheryn Vetter</u> and <u>Christian A. Speck</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


MARVEL, <u>Judge</u>:  Respondent determined a deficiency in petitioner's 1998 Federal income tax of $47,049 and additions to

tax under section 6651(a)(1)[1] of $2,481, section 6651(a)(2) in an undetermined amount, and section 6654 of $582.

After concessions,[2] the issues for decision are: (1) Whether petitioner may deduct from his gross income under section 402 one-half of the retirement distribution he received in 1998; (2) whether petitioner is liable for the 10-percent additional tax on early distributions from qualified retirement plans under section 72(t); and (3) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file a timely 1998 income tax return.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In the notice of deficiency, respondent determined that petitioner had unreported income in 1998 from the following sources: $5,008 of wages, $25 of interest income, $13 of dividend income, $13 of capital gain, $3,139 of rental income, and $147,492 of pension distribution. Petitioner conceded in the stipulation of facts that he and Mrs. Barkley received the following amounts of income for 1998: $5,009 of wages, $3,865 of interest income, $95 of dividend income, $5,042 of capital gain, $198,405 of rental income, and $2,144 of trust income.

On brief, respondent made the following concessions: (1) Petitioner is not liable for additions to tax under secs. 6651(a)(2) and 6654; (2) petitioner is entitled to deduct expenses relating to his apartment rental activity; (3) petitioner's 1998 filing status is married filing jointly; and (4) petitioner's payment of $2,000, made on or about Mar. 7, 2001, was incorrectly credited as $340, and records will be corrected to accurately reflect the payment.

FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Manteca, California, when his petition in this case was filed.

Petitioner was married to M. Jeanne Barkley (Mrs. Barkley) at all relevant times. Petitioner was born on October 27, 1945, and Mrs. Barkley was born on September 17, 1945. On or about June 4, 1998, Mrs. Barkley was diagnosed with multiple sclerosis, and she has been confined to a wheelchair since the beginning of 1998.

At all relevant times, petitioner and Mrs. Barkley owned and managed a 43-unit apartment complex, which consisted of five buildings. Petitioner and Mrs. Barkley resided in one of the apartments and managed the remaining apartments on a daily basis year round. Mrs. Barkley screened and interviewed applicants, while petitioner prepared vacant units for new tenants, performed general outdoor maintenance, hired independent contractors to address specific maintenance issues, and collected rent payments.

In addition to operating the rental property, petitioner worked as a computer programmer for Pacific Bell. On December 30, 1997, petitioner retired from Pacific Bell, after 13 years of service.

On January 26, 1998, petitioner received a retirement distribution of $147,492.46 (the 1998 distribution), his entire beneficial interest in the Pacific Telesis Group Pension Plan (the plan).[3]  Both petitioner and Mrs. Barkley were 52 years old when petitioner received the 1998 distribution.

In the documents he executed to receive the 1998 distribution, petitioner, as the plan participant, elected to receive the distribution in a single payment.  Although petitioner also elected not to have State or Federal income tax withheld from the 1998 distribution, $29,498.49 of Federal income tax (20 percent of the distribution) was withheld.  Mrs. Barkley consented to petitioner's receipt of the 1998 distribution and waived her right to joint and survivor annuity payments.

After petitioner retired from Pacific Bell, he started attending a local college to pursue a teaching certificate in music and drama.  In 1998 petitioner took only one voice class, but in 1999 he was enrolled in several courses that required him to spend time reading, writing papers, and studying for examinations.  By February 2001, petitioner had dropped out of school completely because of the pressures of caring for Mrs. Barkley and managing the apartment complex.

-----

[3]We assume, and the parties have not disputed, that the Pacific Telesis Group Pension Plan was a qualified plan within the meaning of sec. 401(a).

Petitioner did not file a timely 1998 Federal income tax return, and the record does not indicate that petitioner requested an extension of time to file. Petitioner also did not file timely income tax returns for years before and after 1998. Petitioner filed his 1994 return on August 8, 1996, his 1995 return on February 13, 1998, his 1996 return on November 23, 1998, his 1997 return on February 4, 2001, and his 1999 return on June 6, 2002.

On January 14, 2002, respondent mailed to petitioner a notice of deficiency with respect to petitioner's 1998 taxable year. In the notice of deficiency, respondent determined that the full amount of the 1998 distribution was includable in his income. Respondent also determined that petitioner was liable for an addition to tax under section 6651(a)(1) for failure to file a timely 1998 income tax return.

On April 8, 2002, petitioner and Mrs. Barkley filed a joint Form 1040, U.S. Individual Income Tax Return, for 1998. On the Form 1040, petitioner included the 1998 distribution in gross income. Petitioner also reported that he owed an additional 10-percent tax of $14,749 for receiving an early distribution from the plan.

On April 22, 2002, petitioner's petition in this case was filed.[4]  On September 1, 2002, petitioner and Mrs. Barkley filed a joint Form 1040X, Amended U.S. Individual Income Tax Return, for the taxable year 1998.  On the Form 1040X, petitioner reported as gross income only half of the 1998 distribution from the plan, thus reducing his taxable income by $73,746.  Petitioner also reported that he owed an additional 10-percent tax for early distributions, in the amount of $7,374, on only one-half of the 1998 distribution.  Petitioner prepared an amended petition in this case asserting the same position with respect to the 1998 distribution as that taken on his 1998 amended income tax return; the amended petition was filed on January 7, 2003.

## OPINION

### I.  Burden of Proof

Ordinarily, a taxpayer has the burden of proving that the Commissioner's determination is in error.  Rule 142(a).  If, however, a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the tax liability of the taxpayer, the burden of proof shifts to the Secretary, but only if the taxpayer has complied with substantiation

---

[4]Petitioner's petition was mailed on Apr. 13, 2002.

requirements, maintained all required records, and cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews.  Sec. 7491(a).[5]

Petitioner does not contend that section 7491(a) applies to this case.  In addition, petitioner has not established that the requirements of section 7491(a)(2) have been satisfied. Consequently, we hold that petitioner has the burden of proof as to any disputed factual issue.  See Rule 142(a).

Although section 7491(c) does not alter the general burden of proof rule established by section 7491(a), it does require the Commissioner to assume the burden of production with respect to penalties and additions to tax.[6]  Respondent has the burden of production with respect to the addition to tax under section 6651(a)(1).  If respondent introduces sufficient credible evidence to show that petitioner is liable for the section 6651(a)(1) addition to tax, then petitioner has the burden of proving that he is not liable for the addition to tax.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

---

[5]Sec. 7491(a) generally applies to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.

[6]Sec. 7491(c) provides that "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title."

II.  The Proper Tax Treatment of the 1998 Distribution

Gross income includes income from whatever source derived, including income from pensions and annuities.  Sec. 61(a)(9), (11).  A distribution from a qualified retirement plan is includable in the distributee's gross income in the taxable year of distribution.  Sec. 402(a).  The distribution is includable in gross income in the same manner as an annuity under section 72, id., unless the distribution qualifies for special tax treatment under section 402(d) or is excluded under another provision.

Petitioner argues that, when he received the 1998 distribution, Mrs. Barkley became entitled to one-half of the distribution under California community property law.  Although petitioner admits that "both halves" of the 1998 distribution are includable in gross income under section 402(a), and that no part of section 402(d) is applicable to his half of the 1998 distribution, petitioner contends that under section 402(d)(3), he is entitled to deduct Mrs. Barkley's community property interest, equal to half of the 1998 distribution, from his gross income.  Petitioner reasons that, because section 402(d)(4)(E) provides that "The provisions of this subsection, other than paragraph (3), shall be applied without regard to community property laws", all provisions of section 402(d) relating to computing and qualifying for lump-sum averaging "disappear" with regard to Mrs. Barkley's community property interest in the 1998

distribution, leaving only the deduction authorized by section 402(d)(3).

Respondent, on the other hand, contends that petitioner must include the entire amount of the 1998 distribution in his gross income. Respondent also contends that petitioner and Mrs. Barkley are not eligible to claim the benefit of forward averaging under section 402(d) because petitioner did not elect the application of section 402(d) and because neither petitioner nor Mrs. Barkley had attained the age of 59½ when petitioner received the 1998 distribution. Respondent further contends that section 402(d) does not allow a deduction unless the amount deducted is also included in gross income and is subject to the separate tax imposed by section 402(d)(1) and that, because Mrs. Barkley is not a "distributee", she is not liable for any tax on the distribution.

The parties' arguments are difficult to understand, given petitioner's admissions that the entire 1998 distribution is includable in income on his 1998 joint Federal income tax return and that section 402(d) does not apply to his share of the 1998 distribution. Even if we assume, for the sake of discussion, that Mrs. Barkley had a community property interest in the 1998 distribution as petitioner contends, the entire 1998 distribution must still be included in the income reported on the 1998 joint return. As we understand petitioner's arguments, what he is

really contending is that he is entitled to deduct Mrs. Barkley's community property interest (equal to one-half of the 1998 distribution) under section 402(d)(3) and (4)(E). We shall assume, without deciding, that Mrs. Barkley had a community property interest in the 1998 distribution and direct our analysis to the operation of section 402(d)(3) and (4)(E).

As in effect for 1998, section 402(d)[7] affords more favorable tax treatment to a qualified recipient of a distribution that meets the definition of "lump sum distribution" by enabling the recipient to elect to calculate a separate income tax on the distribution, using the special tax computation authorized by section 402(d)(1)(B) (hereinafter referred to as forward averaging). Under section 402(d)(1)(B), a distribution that qualifies as a lump-sum distribution eligible for forward averaging is taxed as if it were paid over 5 years rather than in a single taxable year. If the taxpayer is eligible to elect and elects forward averaging, section 402(d)(1)(A) imposes a separate tax on the distribution, which is computed under section 402(d)(1)(B) and is added to the income tax on the taxpayer's other income. The separate tax under section 402(d) is equal to five times the tax, computed using the rate for unmarried individuals, on one-fifth of the "total taxable amount of the

---

[7]Sec. 402(d) was repealed by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1401, 110 Stat. 1787, for taxable years beginning after Dec. 31, 1999.

lump sum distribution" less the "minimum distribution allowance."
Sec. 402(d)(1)(B).

In order to qualify for forward averaging under section
402(d)(1), the distribution must be a lump-sum distribution
within the meaning of section 402(d)(4)(A), and the recipient
must satisfy the requirements of section 402(d)(4)(B).  Section
402(d)(4) defines lump-sum distribution, in pertinent part, as
follows:

> (A) Lump sum distribution.--For purposes of this
> section and section 403, the term "lump sum
> distribution" means the distribution or payment within
> 1 taxable year of the recipient of the balance to the
> credit of an employee which becomes payable to the
> recipient--
>
>> (i) on account of the employee's death,
>>
>> (ii) after the employee attains age 59½,
>>
>> (iii) on account of the employee's separation
>> from the service, or
>>
>> (iv) after the employee has become disabled
>> (within the meaning of section 72(m)(7)),
>
> from a trust which forms a part of a plan described in
> section 401(a) and which is exempt from tax under
> section 501 or from a plan described in section 403(a).
> Clause (iii) of this subparagraph shall be applied only
> with respect to an individual who is an employee
> without regard to section 401(c)(1), and clause (iv)
> shall be applied only with respect to an employee
> within the meaning of section 401(c)(1).  * * *

Section 402(d)(4)(B) provides that the separate tax authorized
by section 402(d)(1)(A) shall apply to a lump-sum distribution
with respect to an employee only if the amount is received on or

after the date on which the employee has attained age 59½, and the taxpayer elects for the taxable year to have all such amounts received during such taxable year so treated. Petitioner, the employee in question, had not attained age 59½ when he received the 1998 distribution, and neither he nor Mrs. Barkley made the election required by section 402(d)(4)(B)(ii).

Despite these hurdles, petitioner nevertheless maintains that he is entitled to deduct one-half of the 1998 distribution under section 402(d)(3). Section 402(d)(3) allows a taxpayer to deduct from gross income "The total taxable amount of a lump sum distribution for any taxable year * * *, but only to the extent included in the taxpayer's gross income for such taxable year." Petitioner argues that the deduction must be allowed because section 402(d)(4)(E) provides that section 402(d), other than section 402(d)(3), shall be applied without regard to community property laws.

Petitioner cites no authority to support his interpretation of section 402(d), and his argument is without merit for several reasons. Section 402(d)(3) unambiguously provides that a

deduction for the total taxable amount[8] of a lump-sum distribution shall be allowed only to the extent the lump-sum distribution is included in the taxpayer's gross income in the taxable year.  For purposes of section 402(d), the term "lump sum distribution" is a term of art referring to a distribution that meets the requirements of section 402(d) and qualifies for the special tax treatment afforded thereby.  Because the 1998 distribution was not received on or after petitioner attained the age of 59½, see sec. 402(d)(4)(A) and (B), it was not a lump-sum distribution eligible for forward averaging, and, consequently, the special rules of section 402(d) simply do not apply.

For the aforementioned reasons, therefore, we hold that petitioner may not deduct any portion of the 1998 distribution under section 402(d).

---

[8]"Total taxable amount" is defined by sec. 402(d)(4)(D) as follows:

> (D) Total taxable amount.--For purposes of this section and section 403, the term "total taxable amount" means, with respect to a lump sum distribution, the amount of such distribution which exceeds the sum of--
>
>> (i) the amounts considered contributed by the employee (determined by applying section 72(f)), reduced by any amounts previously distributed which were not includible in gross income, and
>>
>> (ii) the net unrealized appreciation attributable to that part of the distribution which consists of the securities of the employer corporation so distributed.

III. Ten-Percent Additional Tax on Early Distributions

Section 72(t)(1) imposes an additional tax of 10 percent on the portion of a distribution from a qualified retirement plan that is includable in gross income, unless the distribution falls under one of the exceptions in section 72(t)(2). Section 72(t)(2)(A)(iii) provides the additional 10-percent tax does not apply to a distribution that is attributable to the employee's being disabled within the meaning of section 72(m)(7). For purposes of section 72(t) as relevant here, the term "employee" includes any participant. Sec. 72(t)(5).

Petitioner argues that the 10-percent additional tax should not apply to Mrs. Barkley's half of the distribution because she was a vested plan participant by virtue of State community property law, and she received the distribution on account of her disability. According to petitioner, section 72(t)(5) "broadens the definition of employee to include a plan participant who is otherwise not an employee". Petitioner relies on the definitions of "vested participant" and "inactive participant" in sections 417(f)(1) and 418D(e) to support his contention that Mrs. Barkley was a plan participant.

Respondent does not address whether Mrs. Barkley was a participant. Rather, he argues that although Mrs. Barkley may have been disabled, she was not an employee for purposes of the exception in section 72(t)(2)(A)(iii). Therefore, respondent

argues, no part of the distribution is exempt from the 10-percent additional tax.

We agree with respondent that petitioner's distribution does not qualify for any exception to the 10-percent additional tax, and we reject petitioner's argument that Mrs. Barkley was a participant for purposes of section 72(t)(5). The term "participant" is defined by Employee Retirement Income Security Act of 1974 (ERISA),[9] Pub. L. 93-406, sec. 3(7), 88 Stat. 834, 29 U.S.C. sec. 1002(7) (2000) as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

See also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (the Supreme Court, quoting Saladino v. I.L.G.W.U. Natl. Retirement Fund, 754 F.2d 473, 476 (2d Cir. 1985), defined "participant" for ERISA purposes to mean "'employees in, or reasonably expected to be in, currently covered employment'").

Mrs. Barkley was not an employee of Pacific Bell. Petitioner was the Pacific Bell employee and plan participant.

---

[9]The definitions in tit. I of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 4(a), 88 Stat. 839, 29 U.S.C. sec. 1003(a) (2000), apply to any employee benefit plan maintained by an employer engaged in interstate commerce, whether or not the plan is a qualified plan for purposes of the Internal Revenue Code.

Petitioner's "Application for Pension Benefit" identifies him as the plan participant and distinguishes between petitioner as the "participant" and Mrs. Barkley as his "spouse". Petitioner has offered no evidence that Mrs. Barkley was considered a participant under the terms of the plan.

Petitioner's reliance on sections 417(f)(1) and 418D(e) to support his argument that Mrs. Barkley was a participant is misplaced. Section 417(f)(1) defines the term "vested participant" for purposes of sections 417 and 401(a)(11) as "any participant who has a nonforfeitable right (within the meaning of section 411(a)) to any portion of such participant's accrued benefit" but does not define the term "participant". Section 411(a) sets forth the various requirements by which an employee's retirement benefit becomes nonforfeitable. The definition of "inactive participant" contained in section 418D(e) refers to a person not in covered service under a plan who is in pay status under the plan or who has a nonforfeitable right to plan benefits. The definition is relevant only for purposes of section 418D, which is completely inapplicable to this case. Petitioner has taken these provisions out of context, and they do not support his contention that Mrs. Barkley was a participant in the plan. We conclude, therefore, that Mrs. Barkley was not an employee of Pacific Bell or a participant in the plan.

The record demonstrates that petitioner was the covered employee and plan participant. The record also demonstrates that the 1998 distribution was attributable to petitioner's retirement and not to any disability of his. Because section 72(t)(2)(A)(iii) requires that a distribution be attributable to the employee's being disabled in order for the exception to the 10-percent additional tax to apply, we hold that petitioner does not qualify for the section 72(t)(2)(A)(iii) exception.

IV. Section 6651(a)(1) Addition to Tax

Section 6651(a) imposes an addition to tax for failure to file a return in the amount of 5 percent of the tax liability required to be shown on the return for each month during which such failure continues, but not exceeding 25 percent in the aggregate, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985); United States v. Nordbrock, 38 F.3d 440, 444 (9th Cir. 1994); Harris v. Commissioner, T.C. Memo. 1998-332. A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and nevertheless was unable to file the return within the prescribed time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure to file or reckless indifference. See United States v. Boyle, supra at 245.

Respondent has met his burden of production under section 7491(c) because petitioner admits, and the record clearly establishes, that petitioner failed to file his 1998 tax return by the due date. Consequently, petitioner was obligated to prove that he was not liable for the addition to tax under section 6651(a)(1). This he failed to do.

Petitioner testified that he did not prepare and file his 1998 return timely because he had fallen behind in maintaining his books and records. Petitioner attributed this to the burden of coping with Mrs. Barkley's physical deterioration and mental lapses, the overtime that Pacific Bell required him to work, the time he spent operating the apartment, and his own depression. While caring for Mrs. Barkley certainly required a significant portion of petitioner's time, we note that petitioner no longer worked for Pacific Bell during 1998. During 1998, petitioner began to attend school in addition to managing the apartment complex and caring for his spouse.

Proof that a taxpayer worked long hours and was too busy to file a timely return is insufficient to establish reasonable cause under section 6651(a). Howe v. Commissioner, T.C. Memo. 2000-291. Moreover, petitioner has a history of filing delinquent income tax returns that predates the diagnosis of his spouse's disability. Because petitioner introduced no evidence of any legally sufficient reason for his failure to file a timely

return, we hold that he did not have reasonable cause for his failure to file as required by section 6651(a)(1) and that, therefore, petitioner is liable for the addition to tax respondent determined.

We have considered the remaining arguments of both parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.