T.C. Memo. 2005-59

UNITED STATES TAX COURT

PETER T. STORAASLI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9836-03.                    Filed March 29, 2005.

Peter T. Storaasli, pro se.

<u>Robert V. Boeshaar</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In separate notices of deficiency, respondent determined the following income tax deficiencies and additions to tax with respect to petitioner's Federal income taxes:[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and
(continued...)

| Year | Deficiency | Addition to tax Sec. 6651(a)(1) | Addition to tax Sec. 6654(a) |
|------|------------|--------------------------------|------------------------------|
| 1996 | $492,138 | $123,035 | $26,194 |
| 1998 | 941 | 235 | -0- |
| 1999 | 78,215 | 19,554 | 3,785 |

Petitioner did not file Federal income tax returns for 1996, 1998, and 1999. As a result, respondent determined the 1996, 1998, and 1999 income tax deficiencies from information reported to him by third parties. Based on records petitioner submitted after the notices of deficiency were issued, respondent recomputed the deficiencies and additions to tax as follows:

| Year | Deficiency | Addition to tax Sec. 6651(a)(1) | Addition to tax Sec. 6654(a) |
|------|------------|--------------------------------|------------------------------|
| 1996 | $220,934 | $55,234 | $11,759 |
| 1998 | -0- | -0- | -0- |
| 1999 | 4,839 | 1,210 | 232 |

After additional concessions,[2] the issues for decision are:

(1) Whether petitioner had capital gain from the sale of real property in the taxable years 1996 and 1999 and, if so, the amount of that gain;

---

[1](...continued)
all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

[2]Petitioner concedes that in 1996 he received $71 of interest income and $117 of capital gain from the sale or exchange of stock.

(2) whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to file Federal income tax returns;

(3) whether petitioner is liable for additions to tax under section 6654(a) for failure to pay estimated taxes; and

(4) whether the Court should impose a penalty under section 6673.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and supplemental stipulation of facts are incorporated herein by this reference. Petitioner resided in Woodinville, Washington, when the petition was filed in this case.

Capital Gain on Sale of Real Property

In 1996, petitioner sold real estate located at 1018 Market Street, Kirkland, Washington (hereinafter, the Market Street property), and 2033 Rose Point Lane, Kirkland, Washington (hereinafter, the Rose Point Lane property). In 1999, petitioner also sold real property located at 16103 167th Avenue Northeast, Woodinville, Washington (hereinafter, the Hollywood Hill lot).

On November 20, 2003,[3] petitioner met with Appeals Officer Jeffrey Sherrill and produced documentation establishing: (1)

---

[3]The notices of deficiency were mailed to petitioner on Mar. 26, 2003.

The cost basis of each property at issue; (2) the costs he incurred to purchase, refinance, and sell the properties; and (3) the expenditures he incurred for improvements he made to certain of the properties. Petitioner, however, did not provide the Appeals officer with any documentation to substantiate any of the other expenses petitioner claimed with respect to the properties at issue. After reviewing the information provided by petitioner, respondent recomputed petitioner's income tax deficiencies for 1996, 1998, and 1999. The pertinent facts regarding petitioner's ownership of each property, and respondent's revised position with respect to each property's adjusted basis and the gain petitioner recognized on each sale, are set forth below.[4]

Market Street Property

In June 1992, petitioner purchased the Market Street property for $143,500. The Market Street property was a single-

---

[4]In addition to the three properties petitioner sold in 1996 and 1999, in October 1998, petitioner sold his interest in a time-share condominium for $12,500. The time-share condominium was located at L-16-C Ellowee, Manson, Washington (hereinafter, the Ellowee Time-share), and petitioner had purchased it in August 1992, for $19,750. After taking into account acquisition and disposition costs, respondent determined that petitioner sustained a loss of $9,892 on the sale of the Ellowee Time-share. Because respondent conceded that there is no deficiency in 1998, and petitioner did not dispute respondent's determination with respect to the Ellowee Time-share property in his petition or trial memorandum or advance any arguments regarding the Ellowee Time-share at trial, we do not decide any issues relating to petitioner's 1998 taxable year. See Rule 34(b)(4).

family residence that petitioner remodeled and converted into office space.[5]  In January 1996, petitioner sold the property for $212,500.

Respondent added $1,671 for acquisition costs and $41,743, the cost of capital improvements,[6] to petitioner's cost basis in the Market Street property.  In computing the amount realized on the sale, respondent subtracted $4,373 from the sale price to account for selling costs.  Using an adjusted sale price of $208,127 and an adjusted basis of $186,914, respondent concluded that petitioner must recognize gain of $21,213 on the sale of the Market Street property.

Respondent did not include any of the following expenses, which petitioner claims should increase the Market Street property's adjusted basis, in computing petitioner's gain:

---

[5]Petitioner testified that he used the office space to conduct his business of importing shoes and leather goods and that he never resided at the Market Street property.

[6]Petitioner originally claimed in his petition an amount of $62,500 for capital improvements, but he maintained in his trial memorandum and at trial that he incurred expenses of $47,500 to improve the Market Street property.  We assume, therefore, that petitioner has waived any argument regarding the difference between the two figures.

| Item | Cost |
| --- | --- |
| Maintenance for 42 mos. at $150/mo. | $6,300 |
| Utilities for 42 mos. | 5,985 |
| Mortgage interest for 42 mos. | 41,679 |
| Insurance for 42 mos. | 4,200 |
| Property taxes for 42 mos. | 7,059 |
| Personal labor of 798 hrs. at $20/hr. | 15,960 |
| Payment to settle asbestos claim | 1,750 |
| Remodeling expenses in excess of $41,743 | 5,757 |

Respondent disallowed any deductions or basis adjustments for these items on the grounds that petitioner failed to substantiate the expenses or establish that they were incurred in the course of his trade or business.

Rose Point Lane Property

In January 1987, petitioner purchased the Rose Point Lane property for $495,000. In March 1996, petitioner sold the property for $1,065,000. The Rose Point Lane property was a waterfront residence in which petitioner and his spouse resided from January 1988 through March 1996.

Respondent increased petitioner's cost basis in the Rose Point Lane property by $1,311 for certain acquisition costs and $2,782 for costs related to refinancing the property and decreased the basis by $66,027 to account for deferred gain from the sale of petitioner's previous residence.[7] In computing the

_____

[7]Petitioner purchased his previous residence, located at 332 4th Ave. S., Kirkland, Washington, in August 1978 for $57,000, and petitioner sold it in January 1988 for $134,500. In computing petitioner's gain on the sale of the residence, respondent increased petitioner's basis by $140 for acquisition

(continued...)

amount realized on the sale, respondent subtracted $60,516 from the sale price to account for selling costs. Using an adjusted sale price of $1,004,484 and an adjusted basis of $433,066, respondent concluded that petitioner must recognize gain of $571,418 on the sale of the Rose Point Lane property.

Respondent did not include any of the following expenses, which petitioner claims should increase the adjusted basis of the Rose Point Lane property, in computing petitioner's gain:[8]

| Item | Cost |
| --- | --- |
| Landscaping and repairs | $21,750 |
| Maintenance for 100 mos. at $150/mo. | 15,000 |
| Refinancing expenses (three times) | 26,500 |
| Mortgage interest | 325,100 |
| Insurance for 100 mos. | 11,150 |
| Property taxes for 100 mos. | 104,167 |
| Personal labor of 1500 hrs. at $20/hr. | 30,000 |
| Settlement charges for utilities | 200 |

Respondent concluded that the costs petitioner allegedly incurred for landscaping and repairs, maintenance, utilities, and personal labor did not constitute capital improvements that must be added to the property's basis. Respondent disallowed any basis

---

[7](...continued)
costs and adjusted the sale price downward by $11,333 to account for disposition costs.

[8]In the petition, petitioner claimed he incurred improvement expenses of $75,000, but he did not argue in his trial memorandum, at trial, or in his posttrial memoranda that he was entitled to any deductions or basis adjustments for improvements. Petitioner also failed to produce any evidence on this point at trial. We conclude, therefore, that petitioner has abandoned this argument. See Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

adjustments for the remaining expenses for lack of substantiation.

Hollywood Hill Lot

In April 1996, petitioner purchased two adjacent parcels of real property, one of which had a home situated on it, for $732,500.[9] Petitioner and his spouse resided in the home, located at 16109 167th Avenue Northeast, Woodinville, Washington, after selling the Rose Point Lane property. Petitioner improved the empty lot adjacent to the home, the Hollywood Hill lot, by constructing a fence around the property. In October 1999, petitioner sold the Hollywood Hill lot for $235,000.

Respondent concluded that petitioner's cost basis in the Hollywood Hill lot was $185,000, approximately 25 percent of the total purchase price of both lots.[10] Respondent added to petitioner's cost basis $431, which represented 25 percent of the costs incurred in the purchase of both lots, and $5,974 for the cost of constructing a fence on the Hollywood Hill lot. In computing the amount realized on the sale, respondent subtracted $9,957 from the sale price to account for selling costs. Using

_____

[9]The cost of purchasing the residence, taking into account $1,294 of acquisition costs, was $548,794.

[10]The parties stipulated that respondent had determined that petitioner's basis in the Hollywood Hill lot was $185,000 and that it was 25 percent of the combined purchase price of the two adjacent lots. In fact, the amount respondent allowed as basis is 25.26 percent of the combined purchase price.

an adjusted sale price of $225,043 and an adjusted basis of $191,405, respondent concluded that petitioner must recognize gain of $33,638 on the sale of the Hollywood Hill lot.

Respondent did not include the following expenses, which petitioner claims should increase the adjusted basis of the Hollywood Hill lot, in computing petitioner's gain on the sale:[11]

| Item | Cost |
| --- | --- |
| Settlement charges for property taxes due | $4,582 |
| Maintenance for 43 mos. at $100/mo.[1] | 4,300 |
| Personal labor of 430 hrs. at $20/hr. | 8,600 |
| Property taxes for 43 mos. | 6,987 |

[1]According to petitioner, the maintenance performed on the Hollywood Hill lot was routine, such as mowing, and was not part of the development of the property for ultimate resale.

Respondent disallowed any deduction or basis adjustment for the

_____

[11]In the petition, petitioner also claimed expenses of $31,500 for mortgage interest and $12,000 for "improvements", but he did not argue that he was entitled to any deductions or basis adjustments for these expenses in his trial memorandum, at trial, or in his posttrial memoranda. We conclude, therefore, that petitioner has abandoned these arguments. See Leahy v. Commissioner, supra.

Petitioner argued for the first time at trial that in addition to the cost of the fence, which respondent added to the property's adjusted basis, he expended approximately $7,000 for the services of the engineer who designed a septic system for the Hollywood Hill lot, which was never installed. Petitioner offered no documentary evidence to substantiate the expense, did not otherwise amend his petition to reflect any change in the nature or amount of the expenses he claims, and did not present any arguments regarding the expenses in his posttrial memoranda. As a result, we do not consider petitioner's argument.

settlement charges for property taxes because petitioner failed to substantiate the expense, and respondent disallowed any adjustments for the remaining items.

Petitioner's Failure To File Income Tax Returns and Related Correspondence

Petitioner failed to file Federal income tax returns for 1996, 1998, and 1999.  On April 2, 1997, petitioner mailed an 11-page letter to the Department of the Treasury in Washington, D.C., requesting that it provide him with the "taxing statutes" that impose on him any Federal income tax liability or require him to file a Federal income tax return.  The letter also contained typical tax-protester arguments regarding the constitutionality of the Federal tax laws and quotations from the Code, Income Tax Regulations, and caselaw relating to the authority of the Federal Government to impose an income tax.  On June 16, 1997, petitioner mailed the same letter requesting the taxing statutes to the Internal Revenue Service's (IRS) Ogden, Utah, office.

On May 15, 2002, respondent sent petitioner a 30-day notice stating that the IRS had not received petitioner's 1999 Federal income tax return.  In the letter, respondent also proposed an income tax deficiency and additions to tax for petitioner's 1999 taxable year and advised petitioner of the Code sections that required him to file a return and provide certain information to the IRS.  In response to respondent's 30-day notice, on June 14,

2002, petitioner mailed to the IRS's Ogden, Utah, office another copy of the 1997 letter requesting the taxing statutes. In addition, petitioner mailed a 15-page letter dated June 14, 2002, to the IRS's Ogden, Utah, office requesting an administrative appeal and reiterating his tax-protester arguments.

By letter dated November 6, 2002, respondent informed petitioner that the U.S. Supreme Court has consistently held that the Federal income tax laws are constitutional and that persons who fail to comply with those laws may be subject to civil and criminal penalties. In addition, respondent notified petitioner of respondent's intent to issue notices of deficiency for petitioner's 1996, 1998, and 1999 taxable years. On March 26, 2003, respondent issued three separate notices of deficiency for petitioner's 1996, 1998, and 1999 taxable years. Because petitioner had not filed Federal income tax returns or produced any basis documentation before respondent issued the notices of deficiency, respondent computed the gain petitioner must recognize on the sale of each property without allowing petitioner any basis in the properties at issue.

Petitioner's Conduct During Litigation

On June 24, 2003, the petition in this case was filed. In the petition, petitioner contested the notices of deficiency for 1996, 1998, and 1999 and included several pages of typical tax-protester arguments. On July 31, 2003, respondent filed a motion

to strike portions of the petition on the grounds that it contained immaterial, frivolous, and nonjusticiable arguments and that it did not contain clear and concise assignments of error or lettered statements of the facts upon which to base assignments of error, as required by Rule 34(b)(4) and (5). On August 21, 2003, we granted respondent's motion to strike.

By letter dated February 5, 2004, respondent advised petitioner that he considered several of the arguments in the petition to be immaterial and frivolous and that he would request that the Court award damages under section 6673 in an amount not to exceed $25,000 if petitioner persisted, at trial, in advancing groundless arguments that did not pertain to the amount of tax due. On February 26, 2004, at the beginning of trial, respondent's motion for sanctions under section 6673(a)(1)(B) was filed. We reserved ruling on the motion and address it in the opinion that follows.

At trial, we warned petitioner on several occasions that we would not entertain any arguments at trial or on brief regarding the source of the Federal taxing authority or the basis for respondent's contention that income from the sale of property is taxable under the laws of the United States. We further explained to petitioner that personal labor is neither includable in basis nor deductible as an expense, that any arguments regarding the tax treatment of personal labor are frivolous,

inappropriate, and a waste of time, and that we would consider any such arguments in deciding the motion to impose sanctions under section 6673.

Following the trial, we directed the parties to prepare and submit a supplemental stipulation of facts and to address the application of section 1034. Although the supplemental stipulation of facts makes no mention of section 1034, and neither party made any arguments regarding section 1034 in their posttrial memoranda, we address the effect of section 1034 on petitioner's sale of property in the opinion that follows because section 1034 affects the computation of gain from the sale of petitioner's Rose Point Lane property.

On June 28, 2004, petitioner's posttrial memorandum was filed. In the posttrial memorandum, petitioner argued that "respondent has refused at all times verbally or upon documents to set forth any laws which authorizes [sic] him to take the actions or make claims for his process of income tax assessments" and that "it is self evident that nothing within the language of the respondent's Supplemental Stipulations of Facts is based upon any United States tax law, statutes or regulations." Petitioner also continued to advance arguments regarding the tax treatment of personal labor in his posttrial memorandum. On July 28, 2004, we filed petitioner's answering posttrial memorandum, which contained 27 pages of tax-protester arguments similar to those

that he had been warned against making at trial and which had been stricken from his petition.

OPINION

I.   Income From Petitioner's Sale of Real Property

   A.   Gain From the Sale of Real Property in General

Gross income means all income from whatever source derived, including gains derived from dealings in property.  Sec. 61(a)(3).  Gain from the sale of property is defined as the excess of the amount realized on the sale of the property over the adjusted basis of the property sold or exchanged.  Sec. 1001; sec. 1.61-6(a), Income Tax Regs.

The amount realized is the sum of any money received plus the fair market value of any other property received, reduced by the expenses of selling the property.  Sec. 1001(b); Chapin v. Commissioner, 12 T.C. 235, 238 (1949), affd. 180 F.2d 140 (8th Cir. 1950).  Section 1011 provides that a taxpayer's adjusted basis for determining the gain or loss from the sale or other disposition of property shall be its cost, adjusted to the extent provided by section 1016.  See also sec. 1012.  Under section 1016(a)(1), the basis of property must be adjusted for expenditures, receipts, losses, or other items, properly chargeable to capital account.  The cost of improvements and betterments made to a taxpayer's property are among the items

properly chargeable to capital account.  Sec. 1.1016-2(a), Income Tax Regs.

A taxpayer is also required to keep permanent books of account or records that are sufficient to establish the amount of gross income, deductions, and other information required to be shown on an income tax return.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  The Commissioner's determination is presumed correct; the taxpayer has the burden of proving the adjusted basis of his property.[12]  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

B.   Section 1034

Section 1034[13] provides for nonrecognition of gain on the sale of a principal residence:

> If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

---

[12]Petitioner has not established that he meets the requirements of sec. 7491(a), and, therefore, the burden of proof does not shift to respondent.

[13]Sec. 1034 applies to the sale or exchange of a principal residence occurring on or before May 6, 1997.  Sec. 1034 was repealed by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 312(b), 111 Stat. 839.

The "adjusted sales price" is the amount realized reduced by expenses for work performed on the old residence to assist in its sale. Sec. 1034(b); sec. 1.1034-1(b)(3), Income Tax Regs. The "amount realized" is the consideration received with respect to the old residence, reduced by selling expenses. Sec. 1.1034-1(b)(4), Income Tax Regs. The taxpayer's cost of purchasing the new residence includes commissions and other purchasing expenses. Sec. 1.1034-1(c)(4)(i), Income Tax Regs. In addition, the basis of the new residence must be reduced by the amount of any gain on the sale of the old residence that is not recognized pursuant to section 1034. Sec. 1034(e).

C. <u>Petitioner's Arguments</u>

Petitioner argues that for purposes of calculating the amount of gain, if any, he must recognize on the sale of each property, he is entitled to increase his adjusted basis in each property for expenses related to his ownership and use of the properties. Other than petitioner's own testimony, the only evidence petitioner offered to substantiate the expenses respondent disallowed were the settlement statements from the purchase and sale of each property and various receipts for improvements he made to the Market Street property and the Hollywood Hill lot. These settlement statements and receipts, however, do nothing more than affirm respondent's revised position as to each property's adjusted basis and sale price.

Petitioner made no effort whatsoever at trial to prove the existence or amount of the expenses he argues should be added to each property's adjusted basis.[14]  In the absence of any corroborating evidence, we are not required to accept petitioner's self-serving testimony.  <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).  Further, the failure to produce evidence, in support of an issue of fact as to which a party has the burden of proof and which has not been conceded by such party's adversary, may be a ground for deciding the issue against that party.  Rule 149(b).

In addition, petitioner cites no authority to support his position that the expenses he allegedly incurred for landscaping, routine maintenance and repairs, utilities, and insurance, with respect to either the Rose Point Lane property or Hollywood Hill lot, may be added to the adjusted basis of either property. Petitioner did not prove that these expenses were for permanent improvements that have a useful life or that they increased the value of the property substantially beyond the taxable years in question.  Secs. 263, 1016; secs. 1.263(a)-1 and -2, 1.1016-2, Income Tax Regs.  Consequently, there is no basis for concluding that the expenses claimed by petitioner were capital expenditures

---

[14]Petitioner did not allege alternatively or prove that any of the expenses in question were business expenses deductible under sec. 162.

that may be added to the adjusted basis of either property and recovered upon sale.

With respect to petitioner's argument that the cost of his personal labor should increase his adjusted basis in the properties at issue, no provision of the Code authorizes an increase in basis for the cost of a taxpayer's personal labor, and we have consistently held that the cost of a taxpayer's personal labor shall not be considered in computing adjusted basis, regardless of whether the property is held for the production of income or as a principal residence. Cox v. Commissioner, T.C. Memo. 1982-667; Bayly v. Commissioner, T.C. Memo. 1981-549; Erwin v. Commissioner, T.C. Memo. 1978-10; Miller v. Commissioner, T.C. Memo. 1975-8. Consequently, we reject petitioner's argument.

D.    Basis Adjustment Under Section 1034

Respondent concluded that petitioner must recognize gain of $571,418 on the sale of the Rose Point Lane property. In arriving at that figure, respondent adjusted petitioner's cost basis in the Rose Point Lane property to account for acquisition and refinancing costs and deferred gain from the sale of petitioner's previous residence, and adjusted the sales price to account for the cost of selling the property. Because petitioner reinvested a portion of the sale proceeds from the Rose Point Lane property in a new residence, however, petitioner must

recognize gain on the sale of the Rose Point Lane property only to the extent that its adjusted sales price exceeds the cost of purchasing the residence adjacent to the Hollywood Hill lot. Sec. 1034(a).

The adjusted sales price of the Rose Point Lane property was $1,004,484, and the cost of purchasing the residence adjacent to the Hollywood Hill lot was $548,794. See sec. 1034(b); secs. 1.1034-1(b)(3) and (4), (c)(4)(i), Income Tax Regs. The adjusted sale price of the old residence exceeds the cost of purchasing the new residence by $455,690. We conclude, therefore, that, pursuant to section 1034, petitioner must recognize gain on the sale of the Rose Point Lane property in the amount of $455,690.[15]

E. Conclusion

Petitioner has failed to produce any evidence to prove the existence or amount of the expenses he argues should be added to each property's adjusted basis or to prove that respondent's revised adjusted basis calculations were in error. We conclude, therefore, that upon selling the properties at issue petitioner is not entitled to recover any expenses in excess of those

---

[15]Accordingly, petitioner's basis in his new residence must be reduced by $115,728, the amount of unrecognized gain on the sale of the Rose Point Lane property. Sec. 1034(e). Because petitioner did not sell the home next to the Hollywood Hill lot, the unrecognized gain from the sale of the Rose Point Lane property does not affect respondent's conclusion that petitioner must recognize gain of $33,638 on the sale of the Hollywood Hill lot.

allowed by respondent as adjustments to basis.  Based on the
Court's review of the evidence, however, we further conclude that
petitioner is entitled to an adjustment under section 1034(a)
with respect to the Rose Point Lane property.  Consequently, we
hold that petitioner realized and must recognize capital gain of
$21,213, $455,690, and $33,638 on the sale of the Market Street
property, Rose Point Lane property, and Hollywood Hill lot,
respectively.

    II.  Section 6651(a)(1) Addition to Tax

    Respondent determined that petitioner is liable for an
addition to tax under section 6651(a)(1) because he failed to
file returns for the taxable years 1996 and 1999.[16]  Petitioner
argues that he did not file returns for these years because the
IRS did not provide him with the statutory provisions he
requested indicating the tax rate and type of tax he was required
to pay and that, without such information, he would be in danger
of filing a fraudulent return.  Petitioner further argues that
the IRS's November 6, 2002, letter informing him that the tax
laws are constitutional was generic, did not pertain to him
personally, and did not address the questions he had presented to

---

[16]Because respondent has now conceded that petitioner does
not owe any income tax deficiency or addition to tax for 1998, we
do not address respondent's original 1998 determination.

the IRS in his protest letters.  Finally, petitioner asserts
that, based on his research of the Code, no tax statute applies
to him.

Section 6651(a) imposes an addition to tax for failure to
file a return in the amount of 5 percent of the tax liability
required to be shown on the return for each month during which
such failure continues, but not exceeding 25 percent in the
aggregate, unless it is shown that such failure is due to
reasonable cause and not due to willful neglect.  See sec.
6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985);
United States v. Nordbrock, 38 F.3d 440, 440 (9th Cir. 1994);
Harris v. Commissioner, T.C. Memo. 1998-332.

Respondent has met his burden of production under section
7491(c) because petitioner admits, and the record clearly
establishes, that petitioner failed to file his 1996 and 1999
income tax returns.  Consequently, petitioner is obligated to
prove that he is not liable for the addition to tax under section
6651(a)(1).  Because petitioner introduced no evidence of any
legitimate reason for his failure to file timely returns, we
sustain respondent's determination that petitioner is liable for
the section 6651(a)(1) additions to tax for 1996 and 1999.

III. Section 6654 Addition to Tax

Section 6654(a) imposes an addition to tax in the case of
any underpayment of estimated tax by an individual.  Section

6654(d) sets forth the amount of the required estimated tax payments an individual must make to avoid the addition to tax imposed by section 6654(a).

Respondent determined that petitioner is liable for an addition to tax under section 6654(a) for the taxable years 1996 and 1999.  Petitioner contends that since the repeal of former section 6015 in 1984, there is no "authority" to impose an addition to tax for failure to make estimated tax payments but makes no other argument regarding the application of section 6654.

We rejected an identical argument in Rogers v. Commissioner, T.C. Memo. 2001-20, affd. without published opinion 281 F.3d 1278 (5th Cir. 2001).  Former section 6015(d) required individual taxpayers to file annual declarations of estimated income tax in certain circumstances and was repealed by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 412(a)(1), 98 Stat. 792, for taxable years beginning after 1984.  The obligation to make estimated tax payments and the addition to tax for underpayment of the estimated tax remained in effect, however, for subsequent taxable years pursuant to sections 411 and 412 of DEFRA, 98 Stat. 788-793, which consolidated the rules pertaining to the payment of estimated income tax into section 6654.

Petitioner admits that he failed to make any payments of estimated tax for 1996 or 1999, and no exception relieving him of

liability for the section 6654 addition to tax applies. Consequently, we hold petitioner liable for the section 6654(a) additions to tax.

IV. Section 6673 Penalty

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay the United States a penalty, not to exceed $25,000, if it appears that the taxpayer has instituted or maintained a proceeding primarily for delay or that the taxpayer's position is frivolous or groundless. A taxpayer's position is frivolous or groundless if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. Williams v. Commissioner, 114 T.C. 136, 144 (2000) (citing Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)).

Petitioner's arguments regarding the constitutionality of the Federal tax laws, the authority of the Federal Government to impose an income tax, and the tax treatment of personal labor are contrary to well-established law. We shall not address these assertions "with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984). Although we struck similar tax-protester arguments from the petition and repeatedly admonished petitioner at trial that by making these arguments he risked incurring a

monetary penalty, petitioner insisted on pursuing such frivolous and groundless arguments at trial and ignored the Court's warnings in drafting his posttrial memoranda.  By making the arguments petitioner has unduly wasted the time and resources of this Court.  See <u>Smith v. Commissioner</u>, T.C. Memo. 2000-290. Petitioner's conduct deserves an appropriate sanction. Accordingly, we shall require petitioner to pay to the United States a penalty under section 6673(a)(1) of $5,000.

To reflect the foregoing and concessions of the parties,

<u>An appropriate order will be issued granting respondent's motion for sanctions, and an appropriate decision will be entered under Rule 155</u>.