Samuel E. BOGLEY and Anita C. Bogley,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 7763.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 15, 1959.

Decided Feb. 16, 1959.

Edward A. White, Washington, D. C.
(D. L. Mitchell, Chevy Chase, Md., on
brief), for petitioners.

Helen A. Buckley, Attorney, Depart-
ment of Justice, Washington, D. C.
(Charles K. Rice, Asst. Atty. Gen., Lee
A. Jackson and Robert N. Anderson, At-
torneys, Department of Justice, Wash-
ington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge,
HAYNSWORTH, Circuit Judge, and
BOREMAN, District Judge.

SOBELOFF, Chief Judge.

This controversy arises from the tax-
payers' sale in 1951 of ten acres of land
left over from the sale in 1950 of a house
and three acres of a total of thirteen
acres of land, used as their residence.
The Commissioner of Internal Revenue
refused to allow the taxpayers the non-
recognition of gain benefits of Sec. 112
(n)(1), Internal Revenue Code of 1939,
as amended, 26 U.S.C.A. § 112(n)(1),
which pertains to the sale or exchange of
residence property, and accordingly as-
sessed a deficiency of $5,313.02 for the
year 1951. The Tax Court's decision,
from which five judges dissented, upheld
the Commissioner's determination, and
this appeal followed.

In 1939 the taxpayers, husband and
wife, acquired thirteen acres of land
near Bethesda, Maryland, upon which
they constructed a home, and lived there
until December 1, 1950, when they pur-

chased and moved into their present home in Rockville, Maryland. Shortly thereafter, but prior to December 31, 1950, the taxpayers sold the Bethesda home and the three acres immediately surrounding it for $54,500.00. It is undisputed that they tried to sell the property as an entirety, but the purchaser was then financially unable to pay for the remaining ten acres. However, the taxpayers assured him the privilege of first refusal and continued their efforts to dispose of the unsold ten acres. There is no evidence of any plan or purpose to retain it for investment or for trade or business. Finally, in June, 1951, five of these acres were sold to a third person; in August, the original purchaser bought the other five acres.

By Sec. 112(n)(1), Internal Revenue Code of 1939,[1] if the taxpayer sells his principal residence and within a period beginning one year before and ending one year after such sale he acquires and uses other property as his principal residence, the gain, if any, from the sale of the old residence is not recognized except to the extent that the selling price of the taxpayer's old residence exceeds his cost of purchasing the new residence.

This section, added to the 1939 Revenue Code by Sec. 318(a) of the Revenue Act of 1951, is, by Sec. 318(c), to apply only with respect to residences sold *after* December 31, 1950.[2]

Since the taxpayers sold the Bethesda house and three acres in December, 1950, before Sec. 112(n)(1) became effective, they reported and paid a capital gain tax on the difference between the sales price ($54,500.00) and their cost basis ($47,486.99), and this tax on the 1950 gain is not involved here. However, when the remaining ten acres were sold in 1951—after Sec. 112(n)(1) became effective—the taxpayers did not report the proceeds of those sales ($20,042.00), claiming that the ten acres constituted "property (hereinafter in this subsection called 'old residence') used by the taxpayer as his principal residence" within the meaning of the Sec. 112(n)(1) exemption.

The majority of the Tax Court judges reasoned that since Sec. 112(n)(1) was applicable only to a "residence" sold after December 31, 1950, and since after that date the taxpayers sold only unimproved land upon which they did not reside, the sales of this acreage were not sales of the taxpayers' "principal residence" or "old residence" to which the statute was applicable.

With this narrow reading of the statute we cannot agree. The Commissioner and the majority of the Tax Court premise their conclusion on the theory that the only date pertinent to this inquiry is January 1, 1951, when Sec. 112(n)(1) became operative; and that at that time the ten acres of unimproved land could not constitute a "residence" in any sense of the term.[3] But the statute does not require that the character of the prem-

1. "§ 112. Recognition of gain or loss.

　　*　　*　　*　　*　　*

"(n) Gain from sale or exchange of residence.

"(1) Nonrecognition of gain. If property (hereinafter in this subsection called 'old residence') used by the taxpayer as his principal residence is sold by him and, within a period beginning one year prior to the date of such sale and ending one year after such date, property (hereinafter in this subsection called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's selling price of the old residence exceeds the taxpayer's cost of purchasing the new residence."

2. Revenue Act of 1951, 65 Stat. 452:
"Sec. 318. Gain From Sale or Exchange of Taxpayer's Residence.

　*　　*　　*　　*　　*

"(c) Effective Date.—The amendments made by this section shall be applicable to taxable years ending after December 31, 1950, but the provisions of section 112(n) (1) and (6) of the Internal Revenue Code shall apply only with respect to residences sold (within the meaning of such section) after such date."

3. It is difficult to harmonize the Commissioner's present position with Rev.Rul. 54-156, 1954-1 Cum.Bull. 112, in which the Commissioner acknowledges that the non-recognition section may be applica-

ises be determined *in vacuo,* ignoring what had gone before. The thirteen acres intact were undoubtedly the taxpayers' "old residence." There is no limitation in the statute, even by implication, that the old residence property must be sold in its entirety. And it is evident that the old residence need not be occupied when it is sold, for, by the express terms of the statute, the taxpayer may purchase *and use* his new residence for as long as one year *prior* to the sale of the former residence. Since the property, or any part of it, need not be used as a residence on the date of sale, no reason appears why it should have to be so used on the date the statute became effective. January 1, 1951, controls in determining when the non-recognition provision becomes effective. The sale, to come within the law, must occur after that date; but it does not limit the period which may be deemed relevant in determining the true character of the premises.

If, after a partial sale of the Bethesda property, the taxpayers had converted their holding of the remainder, such as for investment or for trade or business, the subsequent sale of this remainder could not be considered a sale of residence property. But this hypothetical case is precisely what the record repels. Here, the character of the ten acres never changed, for, as the Government concedes, the taxpayers briefly retained the land only because an immediate purchaser was not available.

To view the ten acres only in light of conditions on January 1, 1951, is to misconceive the nature of the property and results in an undue constriction of the statute, which was designed to relieve a recognized hardship.[4] On that date the ten-acre tract was not merely vacant, unimproved land; it was in reality part of the taxpayers' "old residence," and the

taxpayers, having sold it within one year of their purchase of a "new residence," are entitled to the benefit of the nonrecognition of gain provision of Sec. 112 (n)(1).

The Tax Court decision, upholding the Commissioner's finding of a deficiency in the taxpayers' income arising from the sale of the ten acres, is in our opinion erroneous and, accordingly, is

Reversed.

---

ble to the sale of land without a house. The instance given in the Bulletin is that of a taxpayer who sells the land on which his principal residence is located, and within the year purchases another lot and moves the old house to the new lot and uses it as his principal residence.

4. 2 U.S.Code Congressional and Administrative Service, 82nd Congress, First Session, 1951, Senate Report No. 781, p. 2004; House Report No. 586, p. 1808.