**Stuart M. HUGHES and Genevieve O. Hughes, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 15294.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1971.

Decided Oct. 18, 1971.

Joseph Curtis, Williamsburg, Va., for appellants.

John S. Brown, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Attys., Dept. of Justice, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.

PER CURIAM:

The United States Tax Court upheld a deficiency assessed by the Commissioner of Internal Revenue in the Federal income tax of appellants, Stuart M. and Genevieve O. Hughes, for 1961. This determination resulted from the refusal to the taxpayers of the advantage, accorded by Internal Revenue Code of

1954, § 1034,[1] of the non-recognition of gain accruing upon the sale or exchange of residence property. In the Tax Court, after hearing and upon consideration of the essential facts, all of which had been stipulated by the parties, Judge Austin Hoyt wrote the opinion of the Court sustaining the assessment. 54 TC 1049. From the judgment thereon this appeal is prosecuted.

As we observe no error in the decision, we affirm on Judge Hoyt's opinion.

Affirmed.

HAYNSWORTH, Chief Judge (dissenting):

This case involves difficult questions of statutory construction which I believe were given inadequate consideration by the Tax Court. It is necessary, therefore, for me to state my views in some detail.

In 1961, the taxpayers owned a house and lot in Williamsburg, Virginia, having a cost basis of approximately $20,000. The bulk of their investment was in the house, which they occupied as their residence. This property stood in the way of the Colonial Williamsburg historic reconstruction, and the officials of the development corporation desired to purchase the land, although they had no interest in acquiring the house. After negotiations, it was agreed that the development corporation would purchase the land for a consideration of $20,000 in cash and an inalienable life estate in another house owned by the corporation. In 1961, the value of the life estate was $36,000, so that the total sale price was some $56,000. Within one year after the sale, the taxpayers made $2,000 in capital improvements on the new house.

Because the old house was worth more as a residence than as salvage, the taxpayers used a part of the cash proceeds to purchase another lot and to move their old house onto it. They now hold this house and lot for rental.

In their tax return for 1961, taxpayers claimed the nonrecognition of gain benefits of § 1034 of the Internal Revenue Code.[1] Application of this section would result in a present taxable gain of only $18,000 out of the total gain of $55,000 realized from the transaction.[2] The Commissioner disallowed the claim, taking the position that the transaction failed to qualify for nonrecognition under § 1034 and that the entire gain was taxable in 1961.

In the Tax Court, the Commissioner took the position that the transaction did not qualify on either of two grounds— that the sale of land under a house, without an accompanying sale of the house

1. "SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.
    (a) Nonrecognition of Gain.—If property (in this section called 'old residence') used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales, price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence."

1. 26 U.S.C.A. § 1034:
    (a) Nonrecognition of gain.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is, purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

2. If the taxpayers qualify under § 1034, their sales, price for the property ($56,000) exceeds their cost of purchase ($36,000 value of life estate plus $2000 expended in capital improvements) by this amount.

itself, does not qualify as a sale of "property used by the taxpayer as his principal residence," and that the purchase of an inalienable life estate with the proceeds fails to qualify as the purchase of "property used by the taxpayer as his principal residence," regardless of actual residential use of either property. The Tax Court ruled for the Commissioner on the first ground and did not reach the second.

With all respect, I believe my Brethren have been misled by the shorthand phrases "old residence" and "new residence" into a decision which relies on that shorthand instead of the actual definitions used by Congress.

We have already rejected the Commissioner's contention that a qualifying sale must in all circumstances include the actual physical structure in which the taxpayer formerly resided, and that a sale must include the entire property used as a residence in order to qualify. Bogley v. Commissioner of Internal Revenue, 4 Cir., 263 F.2d 746. In that case the taxpayer's residence included a 13-acre parcel of land. Unable to find a buyer for the entire parcel, he sold the house and three acres. The following year, but within twelve months after the original sale, he sold the remaining ten acres, five to the original purchaser and five to another person. The proceeds from the sale of the acreage were used to purchase a new residence, and the taxpayer claimed the benefits of § 1034.

Although there are factual differences between the two cases, the Commissioner's argument in *Bogley* was identical to that in this case. His position was that the sale of the acreage failed to qualify because it did not include the house in which the taxpayer had resided. We held that the sale did qualify, because the land, though sold separately from the house, had not lost its residence character with respect to the taxpayer at the time he sold it. Its sale separately from the house did not result from a change in its character from residential to non-residential; rather, it resulted solely from the absence of a market at the time of the original sale. We held specifically that "[t]here is no limitation in the statute, even by implication, that the old residence property must be sold in its entirety." 263 F.2d at 748. The determinative factor is the character of the property as residential or not with respect to the taxpayer, not the quantum of property sold. There is a material and critical difference between the severance of an outlying parcel of land the sale of which leaves intact the taxpayer's residence, and the sale of property which is an integral part of, and essential to the existence of, any residence at all.

The Commissioner seems to agree that if the taxpayers here had sold their house as well, whether to the redevelopment corporation or to another purchaser, both sales would have qualified under § 1034, and the entire gain thus realized would have been available for nonrecognition to the extent of reinvestment in residential property. He appears further to concede that if the house had been sold and the subjacent land retained, gain from the sale of the house alone would have been available for nonrecognition. His argument focuses exclusively on the taxpayers' retention of the structure.

Elsewhere, however, the Commissioner has ruled that a sale of subjacent land will qualify to the extent the proceeds are invested in new land onto which the residential structure is to be moved. Rev. Rul. 54–156. I regard that ruling as a correct statement of the law. It properly focuses attention on the character of the property sold—property used by the taxpayer as his principal residence. And, assuredly, the land on which the taxpayer's house rests constitutes residential property of the kind contemplated in the Revenue Ruling and in § 1034.

That ruling would appear dispositive of this case, or at least of the part of it on which the Tax Court ruled. It could be reconciled with the Commissioner's present position only by accepting the notion that whether a sale of property qualifies for nonrecognition under § 1034 depends on the use to which the taxpayer put other property that he did not sell. I

do not understand the Commissioner to advance that argument expressly, but it necessarily inheres in his position before us. I cannot accept such a construction. To be sure, the use to which retained property is put will determine its tax treatment if it should be sold, but it can have no effect on a determination of the tax treatment to be given the sale of other property from which it has been severed. That is the essence of our holding in *Bogley*.[3]

As in *Bogley*, the existence of a market, or the lack of one, determined what the taxpayers did with their house. The redevelopment corporation had no interest in the house. The taxpayers were required either to remove it or to raze it. The situation in which they found themselves is one which occurs with increasing frequency in modern times, where a homesite stands in the way of a desired commercial development or historic reconstruction. In such a case, the homeowner has the option to remove the structure to another lot or to demolish and salvage it. In the latter case the Commissioner's reading of the statute would allow the sale proceeds to be used for residential reinvestment without recognition of gain. But if the structure is worth removal intact, and if the taxpayer chooses to remove it, his entire

gain is immediately taxed, the Government contends, even though he reinvests the proceeds in a new residence. To me the language of the statute neither requires nor suggests the placing of such a premium upon destruction, and I can hardly imagine the Congress to have contemplated or condoned such a result. I think in such a case the taxpayers have fully met their burden when they demonstrate, as they have here,[4] that what they sold was in fact property that they used as their principal residence. It could hardly be otherwise when the act of sale compels them to find another residence.

The Commissioner's second point was not reached by the Tax Court or the majority, but it is necessary for me to consider it as well, for the taxpayers do not qualify unless they meet the reinvestment, as well as the sale, requirements of § 1034.

The Commissioner contends that the inalienable life estate for which the taxpayers exchanged their land cannot qualify under the statute as "property used by the taxpayer as his principal residence." He does not distinguish between a fee simple and a lesser freehold interest. He concedes, and prior decisions construing other similar sections of the Code support the conclusion,[5] that

3. "If, after a partial sale of the Bethesda property, [a sale which would have qualified for nonrecognition had it occurred after the effective date of the statute] the taxpayers had converted their holding of the remainder, such as for investment or for trade or business, the subsequent sale of this remainder could not be considered a sale of residence property." Bogley v. Commissioner, 4 Cir., 263 F.2d 746, 748.

It was never suggested that a subsequent conversion of the remaining acreage to business use would have affected the residence character of the house and three acres previously sold, and such a suggestion would surely have been rejected if made.

4. It appears that the taxpayers had used half their property in the business of renting rooms. The Commissioner argues, and I agree, that this business use of half the structural property is at-

tributable to the land on which it was located. Consequently, I would hold only half the sale price available for residential reinvestment without recognition of gain, in accordance with applicable regulations concerning the sale of dual-use property.

However, since the taxpayers used some of the proceeds to purchase other rental property (the lot onto which the house was moved), § 1031, which qualifies for nonrecognition gain from the sale of business property which is used to purchase other property of like kind, would apply in this case as well. Therefore, I would remand to the Tax Court to determine the extent to which § 1031 exempts the remaining half of the proceeds of sale.

5. See Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (life interest in trust property is a substantial property interest); McAllister v. Com-

a life estate, at least one that is freely alienable, may constitute property within the meaning of the statute. Nor is it questioned that the taxpayers use this property as their principal residence.

The Commissioner's argument that an inalienable life estate cannot constitute "property used by the taxpayer as his principal residence" proceeds from the proposition that the purpose of § 1034 is to defer, but not defeat, taxation on gain realized from the sale of residence property, and from the assumption that the inalienability of the taxpayers' estate precludes the possibility of their subsequent involvement in a taxable transaction with respect to the estate. In fact, neither assumption is accurate.

In many cases, perhaps the majority, in which a taxpayer sells residence property and purchases new residence property with the proceeds, there is no taxation of the gain realized from the sale. Although § 1034 does operate to create a potential future liability for taxes, that liability never becomes a reality unless the taxpayer ultimately engages in a transfer, otherwise taxable, in which he does not reinvest the proceeds in new residence property. Ultimate tax liability can be, and commonly is, lessened or defeated in many ways, including retention of the residence property until the taxpayer dies or by his donation of the property (or a remainder therein) to a charitable or other tax-exempt organization. The critical inquiry in any subsequent transaction is whether gain resulted from a transfer and how the taxpayer applied the proceeds. The nonrecognition sections contain no assurance of ultimate taxation of the gain.

Nor is it true that the inalienability of the taxpayers' interest here precludes the possibility of a later taxable transaction. They cannot convey their interest voluntarily to a third party, a restriction that operates in practice on nearly all life estates, whether or not they may be freely alienable from a purely legal standpoint. However, the taxpayers here, at any time, may sell their interest to the remainderman, or their interest may be subject to condemnation or other involuntary conversion which would entitle them to compensation for their interest. In either event, such a transfer would be fully taxable, unless the proceeds were again reinvested in the manner contemplated by §§ 1033 and 1034.

The practical differences between alienable and inalienable life estates are negligible. In either instance the life tenant's options for disposal of the property are limited, to a great extent if not absolutely, to sale to the remainderman or involuntary conversion. In either event, the transaction may or may not result in liability for taxes, as in the case of a transfer of a fee interest, dependent on the disposition of the proceeds.

These considerations undermine the Commissioner's argument that inclusion of the taxpayers' life estate within the class of interests covered by § 1034 would defeat its purpose. Therefore, I would construe the word "property" as used in that section in its commonly understood sense, and as it is construed when used similarly elsewhere in the Code, to include any substantial legal interest in a residence, and specifically to include a life interest.[6]

missioner of Internal Revenue, 2 Cir., 157 F.2d 235 (life estate is a substantial and durable property interest); Miller v. Commissioner, 2 Cir., 299 F.2d 706 (life estate constitutes a capital asset under Code § 1221, defining capital asset as "property held by the taxpayer * * *."); Sayers F. Harman, 4 T.C. 335 (life estate in coal lands is a capital asset).

6. It is recognized that proceeds from the sale of residence property which are

used to purchase services to be rendered may not be included in the cost of purchasing the new residence. There is a question in the case concerning whether the $36,000 valuation of taxpayers' new residence included the value of the redevelopment corporation's agreement to pay future taxes and assessments on the property. The record does not supply assistance. Accordingly, I would include in the order on remand a direction that the Tax Court consider the valuation of

I would reverse the judgment of the Tax Court and remand the case for a determination of the amount of gain from the sale of taxpayers' land which qualifies for nonrecognition.

taxpayers' interest in order to exclude any portion of it which may represent the value of services rather than the value of the residence property.