DAVID A. GATES AND CHRISTINE A. GATES, PETITIONERS
*v*. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 19350–05.              Filed July 1, 2010.

Ps owned and used a house as a principal residence for 2 years. Ps wanted to enlarge and remodel the house but were advised by an architect that more stringent building and permit restrictions had been enacted since the house was built. In 1999, rather than remodel the house, Ps voluntarily demolished it and constructed a new house on the property. Ps never occupied the new house, and in 2000 they sold it for $1,100,000. Ps realized capital gain of $591,406 on the sale of the new house. On their untimely 2000 Federal income tax return Ps did not report any of the gain from the sale of the new house. Ps subsequently agreed that $91,406 of the gain was taxable, but they claimed that $500,000 of the gain was excludable from income under sec. 121(a), I.R.C. In a notice of deficiency, R determined that Ps are not entitled to the $500,000 exclusion under sec. 121(a), I.R.C., and that Ps are liable for a deficiency in income tax and an addition to tax under sec. 6651(a)(1), I.R.C., for 2000. *Held*: Ps may not exclude from their income, under sec. 121(a), I.R.C., the gain on the sale of the new house because the new house was never used as Ps' principal residence. *Held*, *further*, Ps are liable for the addition to tax under sec. 6651(a)(1), I.R.C., for failure to timely file their 2000 Federal income tax return.

*George J. Tomlinson, Jr.*, for petitioners.
*Kris H. An* and *Jonathan H. Sloat*, for respondent.

OPINION

MARVEL, *Judge*: Respondent determined a deficiency in petitioners' Federal income tax of $112,553 and an addition to tax under section 6651(a)(1)[1] of $11,211 for 2000. Petitioners filed a timely petition contesting respondent's determination.

After concessions,[2] the issues for decision are: (1) Whether petitioners may exclude from gross income $500,000 of capital gain from the sale in 2000 of property on Summit Road in Santa Barbara, California (Summit Road property), under section 121(a); and (2) whether petitioners are liable for the section 6651(a)(1) addition to tax.

## *Background*

The parties submitted this case fully stipulated pursuant to Rule 122. We incorporate the stipulation of facts into our findings by this reference. Petitioners resided in California when the petition was filed.

On December 14, 1984, petitioner David A. Gates (Mr. Gates) purchased the Summit Road property for $150,000. The Summit Road property included an 880-square-foot two-story building with a studio on the second level and living quarters on the first level (original house).[3]

On August 12, 1989, Mr. Gates married petitioner Christine A. Gates. Petitioners resided in the original house for a period of at least 2 years from August 1996 to August 1998.

In 1996 petitioners decided to enlarge and remodel the original house, and they hired an architect. The architect advised petitioners that more stringent building and permit restrictions had been enacted since the original house was built.[4]

Subsequently, petitioners demolished the original house and constructed a new three-bedroom house (new house) on

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners concede that the destruction of the original house does not qualify as an involuntary conversion under sec. 1033. Petitioners further concede a $12,010 operating loss adjustment.

[3] The previous owner of the house had converted the first level from a two-car garage to living quarters in 1972.

[4] The record does not establish whether the new building and permit restrictions prevented petitioners from remodeling and expanding the original house.

the Summit Road property.[5] The new house complied with the building and permit requirements existing in 1999. During 1999 petitioners had outstanding mortgage loans, but the record does not disclose the identity of the property or properties that secured the mortgage loans or the dates, amounts, or purposes of the loans.[6]

Petitioners never resided in the new house.[7] On April 7, 2000, petitioners sold the new house for $1,100,000. The sale resulted in a $591,406 gain to petitioners.

On April 15, 2001, petitioners applied for an automatic extension of time for filing their 2000 Form 1040, U.S. Individual Income Tax Return (2000 return). However, petitioners failed to file their 2000 return by the August 15, 2001, due date. On September 17, 2001, petitioners filed their 2000 return.[8]

On their 2000 return, petitioners did not report as income any of the $591,406 capital gain generated from the sale of the Summit Road property. Petitioners subsequently agreed that $91,406 of the gain should have been included in their gross income for 2000, but they asserted that the remaining gain of $500,000 was excludable from their income under section 121. On September 9, 2005, respondent mailed petitioners a notice of deficiency for 2000 that increased petitioners' income by $500,000[9] and explained that petitioners had failed to establish that any of the gain on the sale of the Summit Road property was excludable under section 121. Respondent also determined an addition to tax under section 6651(a)(1) for petitioners' failure to timely file their 2000 return.

Petitioners timely petitioned this Court seeking a redetermination of the deficiency and addition to tax. Petitioners

_____

[5] The footprint of the new house has a very different shape from that of the original house, and it appears to be two to three times larger than the footprint of the original house. Only about one-half of the land area of the original house overlaps with the land area covered by the new house, and no part of the original foundation perimeter corresponds to the foundation perimeter of the new house.

[6] Although petitioners suggest in their posttrial brief that the loans were related to the demolition of the old house and the construction of the new house, there is no credible evidence in the record that permits us to make any finding about the nature and use of the loans.

[7] During the demolition and construction period, petitioners resided at a location that does not appear in the record. The record does not contain any information regarding whether or when petitioners purchased and moved into a new principal residence.

[8] Petitioners' 2000 return was postmarked on Sept. 5, 2001.

[9] In the notice of deficiency respondent determined a $500,000 adjustment because petitioners had conceded a $91,406 capital gain adjustment.

assert that respondent erred in determining that they were not entitled to exclude $500,000 of the gain under section 121. Petitioners also argue that because they are not liable for a deficiency, respondent erred in determining that they were liable for the section 6651(a)(1) addition to tax.

## *Discussion*

### I. *Burden of Proof*

Ordinarily, the Commissioner's determination is entitled to a presumption of correctness, *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985), and the burden of proving error in the determination generally rests with the taxpayer, Rule 142(a). Petitioners argue that because respondent's determination in the notice of deficiency is arbitrary, excessive, and without foundation, respondent's determination is not entitled to any presumption of correctness and that respondent bears the burden of proof. [10] Petitioners also contend that respondent has failed to meet his burden of producing evidence in support of his determination that petitioners have unreported income.

Petitioners do not dispute that they received proceeds from the sale of the Summit Road property or that the sale resulted in gain that is taxable to them unless some part of the gain is excluded under section 121(a). Accordingly, we hold that respondent's determination is entitled to the presumption of correctness and that petitioners have the burden of proof. We note, however, that this case is fully stipulated and that there is no disputed issue of fact that might be affected by our assignment of the burden of proof.

### II. *Sale of the Summit Road Property*

Gross income means all income from whatever source derived, unless excluded by law. See sec. 61(a); sec. 1.61–1(a), Income Tax Regs. Generally, gain realized on the sale of property is included in a taxpayer's income. Sec. 61(a)(3). Section 121(a), however, allows a taxpayer to exclude from income gain on the sale or exchange of property if the taxpayer has owned and used such property as his or her prin-

---

[10] Petitioners do not contend that sec. 7491(a) shifts the burden of proof to respondent, and petitioners have not established that the requirements of sec. 7491(a) have been met. Moreover, because there are no factual issues in dispute, sec. 7491(a) does not apply.

cipal residence for at least 2 of the 5 years immediately preceding the sale. Section 121(a) specifically provides:

SEC. 121(a). EXCLUSION.—Gross income shall not include gain from the sale or exchange of *property* if, during the 5-year period ending on the date of the sale or exchange, *such property has been owned and used by the taxpayer as the taxpayer's principal residence* for periods aggregating 2 years or more. [Emphasis added.]

The maximum exclusion is $500,000 for a husband and wife who file a joint return for the year of the sale or exchange. Sec. 121(b)(2). A married couple may claim the $500,000 exclusion on the sale or exchange of property they owned and used as their principal residence if either spouse meets the ownership requirement, both spouses meet the use requirement, and neither spouse claimed an exclusion under section 121(a) during the 2-year period before the sale or exchange. Sec. 121(b)(2)(A).

The issue presented arises from the fact that section 121(a) does not define two critical terms—"property" and "principal residence". Section 121(a) simply provides that gross income does not include gain from the sale or exchange of property if "such property" has been owned and used by the taxpayer "as the taxpayer's principal residence" for the required statutory period.

Respondent contends that petitioners did not sell property they had owned and used as their principal residence for the required statutory period because they never occupied the new house as their principal residence before they sold it. Respondent's argument interprets the term "property" to mean, or at least include, a dwelling that was owned and occupied by the taxpayer as his "principal residence" for at least 2 of the 5 years immediately preceding the sale. Respondent urges this Court to conclude that a qualifying sale under section 121(a) is one that includes the sale of a dwelling used by the taxpayer as his principal residence. Because petitioners never resided in the new house before its sale in 2000, respondent maintains that the new house was never petitioners' principal residence.

Predictably, petitioners disagree. Petitioners argue that any analysis of section 121(a) must recognize that the exclusion thereunder applies to the gain on the sale of *property* that was used as the taxpayer's principal residence. Peti-

tioners' argument focuses on two facts—petitioners used the original house as their principal residence for the period required by section 121(a) and they sold the land on which the original house had been situated. Petitioners contend that the term "property" includes not only the dwelling but also the land on which the dwelling is situated. Petitioners seem to argue that the requirements of section 121(a) are satisfied if a taxpayer lived in any dwelling on the property for the required 2-year period even if that dwelling is not the dwelling that is sold. Petitioners contend that because they used the original house and the land on which it was situated as their principal residence for the required term, the Summit Road property qualifies as their principal residence and $500,000 of the gain generated by the sale of the property is excluded under section 121.

Because section 121 does not define the terms "property" and "principal residence", we must apply accepted principles of statutory construction to ascertain Congress' intent. It is a well-established rule of construction that if a statute does not define a term, the term is given its ordinary meaning. See *Perrin v. United States*, 444 U.S. 37, 42 (1979); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 833 (9th Cir. 1996); *Keene v. Commissioner*, 121 T.C. 8, 14 (2003). It is also well established that a court may look to sources such as dictionaries for assistance in determining the ordinary meaning of a term. See *Muscarello v. United States*, 524 U.S. 125, 127–132 (1998). We look to the legislative history to ascertain Congress' intent if the statute is ambiguous. See *Burlington N. R.R. v. Okla. Tax Commn.*, 481 U.S. 454, 461 (1987). Exclusions from income must be construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion. See *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995); *Dobra v. Commissioner*, 111 T.C. 339, 349 n.16 (1998) (citing *Graves v. Commissioner*, 89 T.C. 49, 51 (1987), supplementing 88 T.C. 28 (1987)).

The American Heritage Dictionary of the English Language 1405 (4th ed. 2000) defines "property" as "Something owned; a possession", "A piece of real estate", and "The right of ownership; title." Merriam-Webster's Collegiate Dictionary 935 (10th ed. 1997) defines "property" as "a quality or trait belonging and esp. peculiar to an individual or thing" and "something owned or possessed; *specif*: a piece of real estate".

Black's Law Dictionary 1335–1336 (9th ed. 2009) defines "property" as "The right to possess, use, and enjoy a determinate thing (either a tract of land or a chattel)" and "Any external thing over which the rights of possession, use, and enjoyment are exercised".

The American Heritage Dictionary of the English Language 1395 (4th ed. 2000) defines "principal" in its first definition as "First, highest, or foremost in importance, rank, worth, or degree; chief." Similar definitions appear in other dictionaries. See, e.g., Merriam-Webster's Collegiate Dictionary 926 (10th ed. 1997); Black's Law Dictionary 1312 (9th ed. 2009).

The American Heritage Dictionary of the English Language 1483 (4th ed. 2000) defines "residence" as "The place in which one lives; a dwelling" and "The act or a period of residing in a place." Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1997) defines "residence" as "1 a: the act or fact of dwelling in a place for some time b: the act or fact of living or regularly staying at or in some place for the discharge of a duty or the enjoyment of a benefit" and "3 a: building used as a home: DWELLING [synonym]". See also Black's Law Dictionary 1423 (9th ed. 2009). When the dictionary definitions of "principal" and "residence" are combined, we conclude that "principal residence" may have two possible meanings. It can either mean the chief or primary *place* where a person lives or the chief or primary *dwelling* in which a person resides. Likewise, the term "property" as used in section 121(a) can refer more broadly to a parcel of real estate, or it can refer to the dwelling (and related curtilage)[11] used as a taxpayer's principal residence.

Because there is more than one possible meaning for both the term "property" and the term "principal residence", we cannot conclude that the meaning of section 121(a) is clear and unambiguous. Section 121(a) is not explicit as to whether Congress intended section 121 to apply to a sale of property when the property sold does not include the dwelling that the taxpayer used as a principal residence for the period that section 121(a) requires. Because section 121(a) is ambiguous, we may examine the legislative history

---

[11] Black's Law Dictionary 441 (9th ed. 2009) defines "curtilage" as "The land or yard adjoining a house, usu. within an enclosure."

of section 121 and its predecessor provisions to ascertain Congress' intent regarding the proper tax treatment of principal residence sales.

Until 1951 any gain realized on the sale of a principal residence was taxed as capital gain. S. Rept. 781, 82d Cong., 1st Sess. (1951), 1951–2 C.B. 458, 482. In 1951 Congress recognized that many taxpayers faced hardship as a result of tax on gain realized on the sale of their principal residences—especially where a taxpayer was compelled to sell his principal residence and move to a new one because of a change in circumstances such as an increase in family size or relocation for employment—and granted relief by enacting section 112(n)(1) (former section 112(n)(1)). Revenue Act of 1951, ch. 521, sec. 318, 65 Stat. 494; S. Rept. 781, *supra*, 1951–2 C.B. at 482. Former section 112(n)(1)[12] provided that no gain on the sale of a principal residence was recognized if a taxpayer purchased a new residence for a price at least equal to the selling price of the old residence within the period specified therein. Unlike section 121(a), which excludes gain from the sale of property used as a principal residence, former section 112(n)(1) provided for a deferral of gain from the sale of a principal residence.[13] In the Internal Revenue Code of 1954, ch. 736, 68A Stat. 306, former section 112(n)(1) was recodified as section 1034 (former section 1034).[14]

In 1964 Congress enacted section 121 (former section 121) as part of the Revenue Act of 1964, Pub. L. 88–272, sec. 206,

---

[12] As enacted in 1951, former sec. 112(n)(1) provided as follows:

SEC. 112(n). GAIN FROM SALE OR EXCHANGE OF RESIDENCE.—

(1) NONRECOGNITION OF GAIN.—If property (hereinafter in this subsection called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning one year prior to the date of such sale and ending one year after such date, property (hereinafter in this subsection called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's selling price of the old residence exceeds the taxpayer's cost of purchasing the new residence.

[13] The taxpayer had to reduce the basis in the new residence by the amount of gain excluded under former sec. 112(n)(1). S. Rept. 781, 82d Cong., 1st Sess. (1951), 1951–2 C.B. 458, 483.

[14] In 1954 sec. 1034(a) read as follows:

SEC. 1034. SALE OR EXCHANGE OF RESIDENCE

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence.

78 Stat. 38, to provide older taxpayers tax relief on the sale of their principal residences. [15] Former section 121 was subsequently amended, see Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec. 6011(a), 102 Stat. 3691; Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 123(a), 95 Stat. 197; Revenue Act of 1978, Pub. L. 95–600, sec. 404(a), 92 Stat. 2869; Tax Reform Act of 1976, Pub. L. 94–455, sec. 1404(a), 90 Stat. 1733, and as amended, permitted an individual, on a one-time basis, to elect to exclude from gross income up to $125,000 of gain from the sale or exchange of a principal residence if the taxpayer (1) had attained age 55 before the sale and (2) had owned the property and used it as a principal residence for 3 or more of the 5 years immediately preceding the sale.

In the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105–34, sec. 312(a) and (b), 111 Stat. 836, 839, Congress again amended former section 121 and repealed former section 1034. Section 121 as amended by TRA 1997 (section 121) provides that a taxpayer generally may exclude up to $250,000 of gain realized on the sale or exchange of a principal residence occurring after May 6, 1997, each time the taxpayer sells or exchanges a principal residence and meets the eligibility requirements under section 121. Section 121 applies to petitioners' sale of the Summit Road property.

The legislative history of section 121 supports a conclusion that Congress intended the terms "property" and "principal residence" to mean a house or other dwelling unit in which the taxpayer actually resided. In explaining the 1997 amendment to section 121, the House Committee on the Budget used the terms "home" and "house" and their derivations interchangeably with the term "principal residence":

Calculating capital gain from the sale of a principal residence is among the most complex tasks faced by a typical taxpayer. Many taxpayers buy and sell a number of *homes* over the course of a lifetime, and are generally

---

[15] In 1964 sec. 121 read as follows:

SEC. 121. GAIN FROM SALE OR EXCHANGE OF RESIDENCE OF INDIVIDUAL WHO HAS ATTAINED AGE 65.

(a) GENERAL RULE.—At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—

(1) the taxpayer has attained the age of 65 before the date of such sale or exchange, and

(2) during the 8-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 5 years or more.

not certain of how much *housing* appreciation they can expect. Thus, even though most *homeowners* never pay any income tax on the capital gain on their principal residences, as a result of the rollover provisions and the $125,000 one-time exclusion, detailed records of transactions and expenditures on *home* improvements must be kept, in most cases, for many decades. To claim the exclusion, many taxpayers must determine the basis of each *home* they have owned, and appropriately adjust the basis of their current *home* to reflect any untaxed gains from previous *housing* transactions. This determination may involve augmenting the original cost basis of each *home* by expenditures on improvements. In addition to the record-keeping burden this creates, taxpayers face the difficult task of drawing a distinction between improvements that add to basis, and repairs that do not. The failure to account accurately for all improvements leads to errors in the calculation of capital gains, and hence to an under- or overpayment of the capital gains on principal residences. By excluding from taxation capital gains on principal residences below a relatively high threshold, few taxpayers would have to refer to records in determining income tax consequences of transactions related to their *house*.

\*    \*    \*    \*    \*    \*    \*

Present law also may discourage some older taxpayers from selling their *homes*. Taxpayers who would realize a capital gain in excess of $125,000 if they sold their *home* and taxpayers who have already used the exclusion may choose to stay in their *homes* even though the *home* no longer suits their needs. \* \* \*

[H. Rept. 105–148, at 347 (1997), 1997–4 C.B. (Vol. 1) 319, 669; emphasis added.]

The legislative history demonstrates that Congress intended the term "principal residence" to mean the primary dwelling or house that a taxpayer occupied as his principal residence. Nothing in the legislative history indicates that Congress intended section 121 to exclude gain on the sale of property that does not include a house or other structure used by the taxpayer as his principal place of abode. Although a principal residence may include land surrounding the dwelling, the legislative history supports a conclusion that Congress intended the section 121 exclusion to apply only if the dwelling the taxpayer sells was actually used as his principal residence for the period required by section 121(a).

The conclusion that we reach from an examination of the legislative history surrounding the enactment of section 121 is bolstered by and is consistent with regulations promulgated under the predecessor provisions of section 121. Section 1.121–3(a), Income Tax Regs., under former section 121, provided that the term "principal residence" has the same

meaning as in section 1034 and the regulations thereunder. Section 1.1034–1(c)(3)(i), Income Tax Regs., under former section 1034 (section 1034 regulations), provided that whether property was used by the taxpayer as his principal residence depended on all the facts and circumstances in each case, including the good faith of the taxpayer. The section 1034 regulations further provided that property used by the taxpayer as his principal residence may include a houseboat, a house trailer, or stock held by a tenant-stockholder in a cooperative housing corporation, if the dwelling which the taxpayer is entitled to occupy as such stockholder is used by him as his principal residence. The focal point of the section 1034 regulations was the dwelling unit a taxpayer uses as his principal residence. The section 1034 regulations reinforce our conclusion that to obtain the benefits of former section 1034, a taxpayer who sells a dwelling must have actually used it as his principal residence.

Our conclusion regarding the meaning that Congress attaches to the terms "property" and "principal residence" in section 121(a) is also consistent with caselaw interpreting former section 1034, as in effect before its repeal. This Court held that in order to qualify under former section 1034, a taxpayer had to sell a dwelling that he used as his principal residence. [16] In *Hughes v. Commissioner*, 54 T.C. 1049, 1050

---

[16] We have found only one case where the taxpayers were permitted to exclude gain on a sale of land that did not occur simultaneously with the sale of the taxpayers' principal residence. See *Bogley v. Commissioner*, 263 F.2d 746 (4th Cir. 1959), revg. 30 T.C. 452 (1958). In *Bogley v. Commissioner*, *supra* at 747, the taxpayers attempted to sell the entire 13-acre parcel on which their principal residence was situated, but they were able to sell only the dwelling and 3 acres surrounding the dwelling. Less than 1 year later, the taxpayers sold the remaining 10 acres. *Id*. The Court of Appeals for the Fourth Circuit concluded that the character of the 10 acres never changed and held that the sale of the 10 acres qualified as a sale of the taxpayers' principal residence. *Id*. at 748.

Courts have distinguished *Bogley* on the grounds that in *Bogley* the sale of the 10 acres was not a sale of land alone as the dwelling was also sold albeit in a transaction separate from the sale of the 10 acres. See *Hughes v. Commissioner*, 54 T.C. 1049, 1055 (1970), affd. per curiam 450 F.2d 980 (4th Cir. 1971); *O'Barr v. Commissioner*, 44 T.C. 501, 503 (1965). This Court has stated that *Bogley* does not support the position that a sale of land alone without a sale of the dwelling qualifies for the sec. 1034 exclusion. See *Hughes v. Commissioner*, *supra* at 1054–1056. *Bogley* is distinguishable from this case because petitioners did not sell the original house and the land in separate but related transactions as the taxpayers did in *Bogley*.

Regulations under amended sec. 121, as currently in effect, provide that if a taxpayer meets certain requirements, gain from the sale of land alone may qualify for the sec. 121 exclusion. Sec. 1.121–1(b)(3), Income Tax Regs. However, to qualify under this provision of the regulations, the taxpayer must still sell a "dwelling unit" that meets the requirements under sec. 121 within 2 years before or after the sale of the land. Sec. 1.121–1(b)(3)(i)(C), Income Tax Regs. The regulations under amended sec. 121 are effective for sales on or after Dec. 24, 2002. Sec. 1.121–1(f), Income Tax Regs.

(1970), affd. per curiam 450 F.2d 980 (4th Cir. 1971), the tax-payers agreed to exchange premises A, on which the dwelling that served as their principal residence was situated, for cash and the right to occupy premises B as their new prin-cipal residence. Before the exchange, the taxpayers moved the dwelling from premises A to premises C and began using the dwelling on premises C as income-producing property. *Id.* at 1053. Relying on former section 1034, the taxpayers excluded gain realized on the exchange of premises A (with-out the dwelling) for premises B and cash. *Id.* at 1053. They argued that premises A without the dwelling was as much a part of their principal residence as the dwelling and that the land should be treated as their old residence for purposes of section 1034. *Id.* at 1054. This Court disagreed with the tax-payers and held that they were not entitled to the exclusion because the dwelling that was used as their principal resi-dence was never sold or disposed of as required by former section 1034. *Id.*

In *O'Barr v. Commissioner*, 44 T.C. 501 (1965), the tax-payers sold a portion of a tract of land on which their prin-cipal residence was situated. However, the portion of land sold did not include the residence. *Id.* Relying on former sec-tion 1034, the taxpayers excluded gain from the sale of the land. *Id.* at 502. The taxpayers argued that the controlling fact was how the land had been used before the sale and not whether the land included a dwelling when it was sold. According to the taxpayers, the land that was sold had been part of the property used as their principal residence and that use entitled them to claim the benefit of former section 1034. *Id.* In its analysis of former section 1034, this Court stated that "The only logical interpretation of section 1034 is that it will only apply in situations where a taxpayer has dis-posed of his old dwelling." *Id.* at 503. Because the taxpayers did not dispose of their dwelling, the Court concluded that former section 1034 was inapplicable. *Id.* Other cases have followed *Hughes* and *O'Barr*. See, e.g., *Boesel v. Commis-sioner*, 65 T.C. 378, 390 (1975) (essential element of a resi-dence is the dwelling, not the land on which it is situated); *Hale v. Commissioner*, T.C. Memo. 1982–527 ("The sale of a taxpayer's residence requires the sale of a structure which is used as a principal place of abode, and we have held that the

sale of land without the structure does not constitute a sale of a residence within the meaning of section 1034.").

Former section 1034 required that a taxpayer sell "property * * * used by the taxpayer as his principal residence" in order to qualify for deferral. In 1997, when Congress amended section 121 and repealed section 1034, TRA 1997 sec. 312(a) and (b), Congress continued to use the wording of former section 1034 to describe the type of property that qualified for exclusion treatment under section 121(a) if sold—"property * * * used by the taxpayer as the taxpayer's principal residence". Congress did not give any indication in the legislative history of section 121 that it intended that wording to have a meaning for the purpose of section 121 different from the meaning it had been accorded under former section 1034; nor did Congress state that it disagreed with the interpretation of that wording in cases that had interpreted former section 1034. We infer from the consistent use of the phrase "property * * * used by the taxpayer as his principal residence" in former section 1034 and in section 121 as amended by Congress in 1997 that Congress intended the comparable wording in the two sections to be interpreted comparably.

Although we recognize that petitioners would have satisfied the requirements under section 121 had they sold or exchanged the original house instead of tearing it down, we must apply the statute as written by Congress. Rules of statutory construction require that we narrowly construe exclusions from income. *Commissioner v. Schleier*, 515 U.S. at 328. Under section 121(a) and its legislative history, we cannot conclude on the facts of this case that petitioners sold their principal residence.[17] Accordingly, we hold that peti-

---

[17] Sec. 121(c) provides that a taxpayer who fails to meet the ownership or use requirements under sec. 121(a) because of "a change in place of employment, health, or, to the extent provided in regulations, unforeseen circumstances" is entitled to a prorated exclusion under sec. 121(a). The prorated exclusion is based on the period of a taxpayer's ownership and use of the principal residence. See sec. 121(c)(1). Because petitioners never used the new house as their principal residence, they would not qualify for proration in any event. Even if they did, however, petitioners did not introduce any credible evidence to support their claim to a prorated exclusion. Petitioners argue that the unsustainable debt they incurred in constructing the new house is an unforeseen circumstance that justifies an exclusion under sec. 121(a). However, petitioners did not introduce any credible evidence regarding the debt they allegedly incurred or that the debt was "unsustainable", or that unsustainable debt qualified as "unforeseen circumstances" within the meaning of sec. 121(c).

tioners may not exclude from income under section 121(a) the gain realized on the sale of the Summit Road property. [18]

III. *Addition to Tax Under Section 6651(a)(1)*

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return, unless it is shown that such a failure is due to reasonable cause and not due to willful neglect. *United States v. Boyle*, 469 U.S. 241, 245 (1985); *United States v. Nordbrock*, 38 F.3d 440, 444 (9th Cir. 1994); *Harris v. Commissioner*, T.C. Memo. 1998–332. A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time. See sec. 301.6651–1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure to file or reckless indifference toward filing. See *United States v. Boyle*, *supra* at 245.

If a taxpayer assigns error to the Commissioner's determination that the taxpayer is liable for the addition to tax, the Commissioner has the burden, under section 7491(c), of producing evidence to show that the section 6651(a) addition to tax applies. See *Swain v. Commissioner*, 118 T.C. 358, 364–365 (2002); *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). To meet his burden of production, the Commissioner must come forward with sufficient evidence to show that it is appropriate to impose the relevant penalty or addition to tax. *Higbee v. Commissioner*, *supra* at 446. However, the Commissioner is not required to introduce evidence regarding reasonable cause, substantial authority, or similar defenses. *Id.*

Petitioners admit that they did not file a timely Federal income tax return for 2000. This is sufficient to satisfy respondent's burden of producing evidence that the section 6651(a)(1) addition to tax applies. Petitioners did not introduce any evidence to prove that they had reasonable cause for their failure to file their 2000 return timely. Consequently, we sustain respondent's determination.

---

[18] Petitioners do not contend or provide any authority for the proposition that we should allocate the gain between gain on the land and gain on the residence, or offer any evidence to support such an allocation.

We have considered all the other arguments made by the parties, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*

Reviewed by the Court.

COLVIN, COHEN, GALE, THORNTON, WHERRY, GUSTAFSON, PARIS, and MORRISON, *JJ*., agree with this majority opinion.

––––––––––––––––––

COHEN, *J*., concurring: I agree with the majority and write to explain my disagreement with the dissent.

The dissent argues that the holding of the majority is inconsistent with the remedial purpose of section 121. This Court's assigned task in the first instance, however, is to apply section 121 as written to the facts of this case. Section 121 requires that we examine the sale or exchange of property and provides that if the property sold was owned and used by the taxpayer as the taxpayer's principal residence for at least 2 of the 5 years preceding the sale or exchange, the taxpayer qualifies for the exclusion under section 121(a).

The focal point of the section 121 analysis is the property sold or exchanged. In this case the property sold consisted of land that petitioners had used for the required period (old land) and a new dwelling in which petitioners had never resided (new house). After concluding that the term "principal residence" means the dwelling (and associated land) in which a taxpayer resided as his or her primary home, the majority examined the facts to see whether what petitioners sold qualified as a principal residence within the meaning of section 121(a).

The fully stipulated facts reveal that the dwelling petitioners sold was not used as their principal residence for the required 2-year period. Petitioners demolished their former principal residence and built a new, much larger house that they never occupied. The facts are decisive and support the holding of the majority.

The dissent maintains that, because petitioners owned and used their former principal residence (old house, now demolished, and old land) for the required 2-year period, the prop-

erty that they sold (new house and old land) qualifies for the exclusion. The dissent argues that this result is consistent with Congress' intention to liberalize the exclusion rules in 1997 when it amended section 121. However, the dissent ignores the fact that the term "principal residence" has been consistently used by Congress since 1951, and there is no evidence in the legislative history of the Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105–34, sec. 312(a) and (b), 111 Stat. 836, 839, which amended section 121 and repealed section 1034, to indicate that Congress intended to change the meaning of the term "principal residence" sub silentio when it amended section 121. Although section 121 as amended by the TRA 1997 blended the approaches of former section 121 and former section 1034 to provide a simpler and more uniform treatment of gain generated by the sale of a principal residence, Congress did not change the definition of principal residence, a term it has used consistently since 1951 when section 112(n), the predecessor provision to former section 1034, was first enacted.

The majority's holding is consistent with caselaw that has developed under the predecessor provisions of section 121, most particularly former section 1034. The cases examine the dwelling to decide whether the property sold was used as the taxpayer's principal residence. If a taxpayer sold a dwelling that the taxpayer used as a principal residence, the taxpayer qualified for the deferral provided by former section 1034 if the other requirements of section 1034 (such as the timely purchase of a qualifying replacement property) were met. If a taxpayer sold some part of the underlying land but not the dwelling that the taxpayer used as a principal residence, the taxpayer could not defer the recognition of gain on the sale because the taxpayer did not sell his or her principal residence. See, e.g., *Hughes v. Commissioner*, 54 T.C. 1049 (1970), affd. per curiam 450 F.2d 980 (4th Cir. 1971); *O'Barr v. Commissioner*, 44 T.C. 501 (1965). If a taxpayer sold his or her principal residence with part but not all of the underlying land and then sold the rest of the land close to the time of the sale of the principal residence, at least one court has held that the sales must be integrated in deciding whether the gain on the sale of land could be deferred. *Bogley v. Commissioner*, 263 F.2d 746 (4th Cir. 1959), revg. 30 T.C. 452 (1958). Although the Court of Appeals ultimately decided

in *Bogley* that deferral was appropriate, the deferral was predicated on the fact that the taxpayer had also sold the principal residence in a related sale.

If petitioners had sold their old home instead of demolishing it, they would have qualified for the section 121 exclusion. That is not what they did. They demolished the old home, constructed a new and larger dwelling, and then sold the new dwelling without occupying it for the required 2-year period. The dissent objects to the result and argues that the majority's analysis in this case will distort the result in other cases in which the taxpayer should qualify for the section 121 exclusion. The response to this argument is straightforward—it is not this Court's job to anticipate and decide cases that are not yet before it. As the Supreme Court cautioned in *Dewsnup v. Timm*, 502 U.S. 410, 416–417 (1992):

Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

We have often stated that we "must decide the case in the light of what was done, not what might have been done." *Paula Constr. Co. v. Commissioner*, 58 T.C. 1055, 1060 (1972), affd. per curiam without published opinion 474 F.2d 1345 (5th Cir. 1973); see also *Rogers v. Commissioner*, 44 T.C. 126, 136 (1965) ("Our decision must be governed by what was actually done, rather than by what might have been done."), affd. per curiam 377 F.2d 534 (9th Cir. 1967). The majority properly limits its analysis to the facts of this case, which were fully stipulated, and to the issues raised by the parties. Petitioners did not argue for a partial exclusion of gain attributable to the sale of the land, nor did petitioners introduce any evidence that would have permitted the Court to allocate gain between the new house and the land. Petitioners argued only that they were entitled to the full exclusion under section 121. As the majority holds, the property sold, i.e., the dwelling and related land, must have actually been used as petitioners' principal residence for the required 2-year period. Because the new house petitioners sold was never used as their principal residence, the section 121 exclusion does not apply here. We may reach a

different conclusion in cases involving different facts if and when the opportunity arises, but we should not distort the result in this case by anticipating those cases.

GALE, THORNTON, MARVEL, WHERRY, GUSTAFSON, and PARIS, *JJ*., agree with this concurring opinion.

————————————

HALPERN, *J*., dissenting: There is adequate ground for the majority's conclusion that, to qualify for the section 121 exclusion, the taxpayer must sell not only the land on which her principal residence is located but also the principal residence itself. Nevertheless, I think that there is also adequate ground for concluding that petitioners' sale of the new house qualified for that exclusion.

*Interpretation Contrary to the Remedial Intent of Section 121(a)*

The gain exclusion rule of section 121(a) applies if three conditions are met: (1) There must be a sale or exchange (without distinction, sale); (2) the sale must be of "property * * * owned and used by the taxpayer as the taxpayer's principal residence" (the property use condition), and (3) the property use condition must be satisfied for 2 out of the 5 years ending on the date of sale of the property (the temporal condition). The majority focuses on the second condition (the property use condition) and interprets the condition as being satisfied only if the property sold constitutes, at least in part, "a house or other structure used by the taxpayer as his principal place of abode." Majority op. p. 10. The majority does not rely on the text of the statute for that interpretation (which text it concludes is ambiguous) but looks to a report of the Committee on Ways and Means, House of Representatives (included as part of H. Rept. 105–148, at 285 (1997), 1997–4 C.B. (Vol. 1) 319, 607, a report of the Committee on the Budget, House of Representatives, accompanying H.R. 2014, 105th Cong., 1st Sess. (1997), which was enacted as the Taxpayer Relief Act of 1997, Pub. L. 105–34, 111 Stat. 788), explaining the committee's reasons for recommending an amendment to section 121. The committee's reasons are principally the difficulties a homeowner faces in keeping track of his basis in his home. The committee report lan-

guage the majority quotes neither addresses the language of the proposed amendment nor purports to exhaust the situations giving rise to the need for the amendment. It provides insufficient grounds to conclude "that Congress intended the section 121 exclusion to apply only if the dwelling the taxpayer sells was *actually used as his principal residence* for the period required by section 121(a)." Majority op. p. 10 (emphasis added).

While the majority is correct that the Supreme Court has said that exclusions from income are to be narrowly construed, *Commissioner v. Schleier*, 515 U.S. 323, 328 (1995) (more precisely, the Court said: "'the default rule of statutory interpretation [is] that exclusions from income must be narrowly construed'" (quoting *United States v. Burke*, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment))), the Supreme Court has also said that, if the meaning of a tax provision liberalizing the law from motives of public policy is doubtful, then it should not be narrowly construed, *Helvering v. Bliss*, 293 U.S. 144, 150–151 (1934).

With that latter rule of construction in mind, consider a taxpayer whose longtime home is demolished by a natural disaster (a hurricane). The taxpayer lacks insurance. Nevertheless, she rebuilds on the same land (perhaps a bit further from the ocean) and lives in the rebuilt house for 18 months, and then she sells the house and land at a gain. Although the taxpayer satisfies the property use condition, I assume that, nevertheless, under the majority's analysis, she gets no exclusion because she fails the temporal condition; i.e., she has not lived in the rebuilt house for 2 or more of the last 5 years.[1] I assume further that, if her house had been only damaged (and not demolished), and she repaired it, she would get an exclusion. That seems like an untenable distinction to me.[2]

---

[1] Under the facts assumed, the destruction of the original house does not result in the conversion of the house into similar property or into money. See sec. 1033(a). Therefore, the rebuilt house is not property acquired after an involuntary conversion, and there would be no tacking of the use and period of occupancy of the original house onto the rebuilt house for purposes of sec. 121. See sec. 121(d)(5)(C).

[2] It is no answer to that criticism to say, as Judge Cohen does, that it is not the Court's job to anticipate and decide cases that are not yet before it. We are a national court that treats its own cases as precedent until we overrule ourselves by action of the Court Conference. This case (and my arguments) have been before the Court Conference. We should recognize, as no doubt the Commissioner and taxpayers will, the weight that the analysis in this case will carry in similar situations under principles of stare decisis.

*Difficult Interpretative Questions*

The majority's interpretation of the property use condition naturally suggests that there is some recognizable difference between remodeling a house and demolishing and rebuilding the house. I assume the majority does not mean to suggest that any remodeling of a home (1) terminates the use of that home as the taxpayer's principal residence and (2) resets the temporal clock to zero time elapsed. If not, then is there some level of remodeling that does (1) terminate the use of the home as the taxpayer's principal residence and (2) set the temporal clock to zero? What about a taxpayer who, wanting a bigger house, demolishes the old house (but not the foundation) and constructs a larger (taller) house using the old foundation? Is that remodeling or rebuilding? What about keeping part of the foundation, and expanding horizontally? If that is remodeling, then there may be an easy way for the Court to reach a similar result in the case before us. The parties have stipulated an exhibit, a blueprint, that shows footprints of both the old and the new house. I have examined the exhibit, and the footprints overlap. Might we not conclude that part of the foundation of the old house was incorporated into the new, thus making the case a remodeling case and not a rebuilding case?

The majority's report will undoubtedly raise the kind of remodeling versus rebuilding questions that I have raised. I think that the better course would be to avoid provoking those questions.

*Disposition of House Followed by Sale of Land*

Cases, see, e.g., *Bogley v. Commissioner*, 263 F.2d 746 (4th Cir. 1959), revg. 30 T.C. 452 (1958), suggest that, and the regulations, sec. 1.121–1(b)(3), Income Tax Regs., confirm that, if the principal residence consists of both land and improvements, both a prior sale of the improvements and part of the land and a subsequent sale of the remaining land can qualify under section 121(a). Although petitioners are perhaps at a disadvantage for not arguing it, it does not seem to me to be an impossible stretch to view the demolition of the original house as a sale for zero dollars followed by a later sale of the land. There would then be a ground to apply section 121(a) to the subsequent sale of the land. The demoli-

tion/disposition of the original house would give rise to a non-deductible loss, with the basis in the house going to the land. See sec. 280(B). Any gain attributable to the original house and land would be realized on the sale of the land (and new house). That approach requires the allocation of the proceeds between the new house and the land, which apparently petitioners did not think to address.

*Conclusion*

I would treat the demolition and reconstruction of petitioners' house no differently from a renovation. As a second best solution (if I had adequate information), I would treat the original house as being sold for zero dollars upon its demolition and apply section 121 to a subsequent sale of the land (and new house).

WELLS, GOEKE, KROUPA, and HOLMES, *JJ.*, agree with this dissent.